1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| TONY VALENTINO GRISSOM, | Case No.  1:21-cv-01273-JLT-SAB |
| Plaintiff, | ORDER SCREENING COMPLAINT |
| v. | (ECF No. 1) |
| MODESTO POLICE DEPARTMENT, et al., | |
| Defendants. | |

20       Tony Valentino Grissom, also known as Hawk Silverdragon ("Plaintiff"),[1] proceeding *pro

21   se* and *in forma pauperis*, initiated this action in the Sacramento Division of the Eastern District of

22   California on August 13, 2021, against Defendants Modesto Police Department, City of Modesto,

23   Officer Tyrell Minnis-Swass, and two Doe Officers.  (ECF No. 1.)  On August 23, 2021, the case

24

25   [1] The Court notes that, at various times throughout the complaint and attached documents, Plaintiff refers to himself as
both Hawk Silverdragon Trust© and Tony Valentino Grissom Exrel Hawk Silverdragon as "accommodation party" of
26   Hawk Silverdragon Trust©.  (See Compl. at 1; see also id. at ¶ 4 (Plaintiff refers to himself as beneficiary of the Tony
Valentino Grissom Exrel Hawk Silverdragon Trust©).)  It is at times unclear whether Plaintiff purports to be asserting
27   claims on behalf of the trust or himself.  However, as Local Rule 183(a) prohibits non-attorneys from representing
business entities and Plaintiff, who is proceeding in this matter *pro se*, has not indicated that he is a practicing attorney
and therefore may not represent the Hawk Silverdragon Trust©, the Court presumes for screening purposes that
28   Plaintiff is asserting all claims on behalf of himself as Tony Valentino Grissom aka Hawk Silverdragon.

1    was transferred from the Sacramento Division to this Court.  (ECF No. 3.)  The complaint is now

2    before this Court for screening.  Having considered the complaint, as well as the Court's file, the

3    Court issues the following screening order.

## I.

### SCREENING REQUIREMENT

6        In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen

7    each case, and shall dismiss the case at any time if the Court determines that the allegation of

8    poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which

9    relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

10   28 U.S.C. § 1915(e)(2).

11       A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke

12   v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227–28 (9th Cir.

13   1984).  The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably

14   meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at

15   327; see also Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005) (defining frivolous as "of little

16   weight or importance: having no basis in law or fact").  An action is malicious if it was filed with

17   the "intention or desire to harm another."  Andrews, 398 F.3d at 1121 (9th Cir. 2005).

18       To state a claim upon which relief may be granted, a complaint must contain "a short and

19   plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P.

20   8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of

21   a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556

22   U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Rather,

23   a plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible

24   on its face,' " such that the Court may reasonably infer that each named defendant is liable for the

25   misconduct alleged.  Id. at 663 (quoting Twombly, 550 U.S. at 555); Moss v. U.S. Secret Service,

26   572 F.3d 962, 969 (9th Cir. 2009).  Thus, the plaintiff must demonstrate that each defendant

27   personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th

28   Cir. 2002).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and

"facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

In reviewing a *pro se* complaint, the Court is to liberally construe the pleadings in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 521 (1969); see also Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)) ("where the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt."); U.S. v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020) ("It is an entrenched principle that *pro se* filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers.") (citations and internal quotations omitted).  Nonetheless, while factual allegations are accepted as true, legal conclusions are not.  Twombly, 550 U.S. at 555.

As a general rule, the Court must limit its review to the operative complaint and may not consider facts presented in extrinsic evidence.  See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001).  Materials submitted as part of the complaint, however, are not "outside" the complaint and may be considered.  Id.; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Moreover, the Court is not required to accept as true conclusory allegations which are contradicted by exhibits to the complaint.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295–96 (9th Cir. 1998).  Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.  Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff alleges he is "one of the people indigenous to this Land of the California Republic." (Compl. ¶ 4.)  On August 22, 2020, around noon, Plaintiff was "traveling from point (a) to point

(b) in a private conveyance of his choice," also referred to by Plaintiff as "his vehicle," in Modesto, California.  (Id. at ¶¶ 8, 11.)  As he was "on his way to park his vehicle," Plaintiff was stopped by Defendant Officer Minnis-Swass "for a suspected traffic violation," specifically, an expired vehicle registration.  (Id. at ¶¶ 8, 28; see also Ex. D, ECF No. 1 at 25–26 (traffic citation for violation of Cal. Veh. Code § 4000(A)(1)).)  When asked to show his driver's license, Plaintiff told Minnis-Swass he was not "driving" because he was "not actively engaged in commerce."  (Compl. ¶¶ 9, 11.)  Minnis-Swass disagreed with this characterization and informed Plaintiff he needed to see Plaintiff's driver's license, or he would have to arrest Plaintiff.  (See id. at ¶ 12.)  Instead of presenting a driver's license, Plaintiff handed Minnis-Swass a "Fee Schedule,"[2] a "Notice to Arresting Officer,"[3] and a "Sovereign Identification."[4]  (Id. at ¶ 13; id. at Exs. A–C, ECF No. 1 at 15–24.)  At this time, Minnis-Swass called his "superior officer" to verify whether he should arrest Plaintiff for failure to show a driver's license.  (Compl. ¶ 14.)

Thereafter, two Doe officers arrived on scene.  (Id. at ¶ 15.)  Plaintiff concludes the Doe officers "formed a verbal agreement" with Minnis-Swass to arrest Plaintiff for failure to produce a driver's license but alleges no other facts about the Doe officers.  Minnis-Swass then arrested Plaintiff by removing him from his vehicle and placing him in handcuff restraints.  (Id. at ¶ 16.)

---

[2] Plaintiff appends a copy of the "Notice of Fee Schedule for Protection From Corporate Abuse, False Arrest, Victimless Charges, and Bills of Attainder" he provided to Minnis-Swass as Exhibit A to the complaint.  (Ex. A, ECF No. 1 at 15–18.)  The notice declares Plaintiff is "a people as recognized in America's founding documents, including the Magna Carta, The Articles of Confederation, the Declaration of Independence, and the original Constitution for the united states of America," and asserts Plaintiff's sovereignty in America apart from the State of California, which Plaintiff declares to be a "corporation," and all state employees its "employees and franchises . . . [who] lack understanding of Corpus Delecti."  At bottom, the notice declares Plaintiff may not be punished for violating any California regulation or statute that he deems to be undeserving of punishment and sets forth a "fee schedule" by which Plaintiff purports to charge arresting police officers a fee of some to-be-determined weight "in troy ounces of .999 pure gold" per violation of Plaintiff's "unalienable rights" and/or per hour that Plaintiff is detained or under arrest.

[3] Plaintiff appends a copy of the "Notice to Arresting Officer with Miranda Warning" he provided to Minnis-Swass as Exhibit B to the complaint.  (Ex. B, ECF No. 1 at 19–21.)  The notice purports to notify any arresting officer that Plaintiff is "working in the capacity of a Civil Rights Investigator," warns that any action taken by the officer may result in a civil rights lawsuit being brought against him, and sets forth a list of "demands" that must be satisfied by the arresting officer in connection with any arrest in order to avoid being sued by Plaintiff in civil court.

[4] The document referred to as Plaintiff's "Sovereign Identification" and appended to the complaint as Exhibit C is titled "Claim for the Live Life." (Ex. C, ECF No. 1 at 22–24.)  It lists Plaintiff's birthdate and birth parents' names, includes illegible signatures and extremely grainy and poor quality copies of photos that the Court surmises are meant to be of Plaintiff's headshot, left and right retina, fingerprint, and "DNA," and identifies Plaintiff by his chosen name, Hawk Silverdragon.  While the Court declines to ascertain whether the document constitutes a form of identification considered valid by some organization or sovereign nation, it is clear that the document was not issued by the State of California, Department of Motor Vehicles.

4

Minnis-Swass searched Plaintiff's clothes and removed a wallet and a computer thumb drive from Plaintiff's pockets.  (Id. at ¶ 17.)  Minnis-Swass put Plaintiff in the back of his police vehicle, then he looked through Plaintiff's wallet and found Plaintiff's driver's license.  (Id. at ¶ 18.)  Minnis-Swass issued Plaintiff a citation and told Plaintiff he would be released if he signed the citation.  (Id. at ¶ 19; see also id. at 26.)  Plaintiff claims he signed the citation "under duress, coercion and threat of slavery."  (Id. at ¶ 20.)  After Plaintiff signed the citation, unspecified Defendants released Plaintiff, returned Plaintiff's wallet but not the thumb drive to him, took pictures of Plaintiff's "Fee Schedule," "Notice to Arresting Officer," and "Sovereign Identification," and departed from the scene.  (Id. at ¶¶ 22, 23.)  Plaintiff alleges that, during the entire incident, he was never read his Miranda rights or criminally charged.  (Id. at ¶¶ 24, 34.)

Based on these allegations, Plaintiff attempts to assert causes of action for: 42 U.S.C. § 1983: false arrest (Count 1); 42 U.S.C. § 1983: due process/Brady violation (Count 2); state law claim: false imprisonment (Count 3); 42 U.S.C. § 1983: conspiracy to commit constitutional violations (Count 4); 42 U.S.C. § 1983: failure to intervene (Count 5); and state law claims of malicious prosecution (Count 6); intentional infliction of emotional distress (IIED) (Count 7); respondeat superior (Count 8); and indemnification (Count 9).  (Id. at 5–12.)  Plaintiff does not specify which Defendant he is asserting each claim against and may possibly be asserting every against each Defendant.  Liberally construing the complaint, the Court will address Plaintiff's claims as asserted against each Defendant.

## III.

## DISCUSSION

### A.    Doe Officer Defendants

As an initial matter, the Court notes Plaintiff names two Doe defendants in his complaint, referring to them as "Officer John Doe 1" and "Officer John Doe 2."  Federal Rule of Civil Procedure 10 requires a plaintiff to include the names of the parties in the action.  Fed. R. Civ. P. 10(a).  Eventually, Plaintiff may be afforded an opportunity for limited, preliminary discovery to identify the names of the Doe defendants "unless it is clear that discovery would not uncover their identities," Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), and only after the Court is

satisfied that Plaintiff has exhausted every other possibility of finding their names.[5]  See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie, 629 F.2d at 642).  At this time, however, Plaintiff asserts no factual allegations pertaining to either John Doe 1 or John Doe 2 of the Doe officer defendants, nor does he identify which Doe officer defendant committed what alleged act.  This is insufficient to put prospective defendants on notice of their alleged actions or omissions that Plaintiff claims violate his federal rights.  As such, Plaintiff fails to state any federal or state claim against either of the Doe officer defendants.

### B.   Federal Claims

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law.  42 U.S.C. § 1983; Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006); Jones, 297 F.3d at 934.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' "  Graham v. Connor, 490 U.S. 386, 393–94 (1989) (citation omitted).  To state a claim under § 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law.  Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing Long, 442 F.3d at 1185; West v. Atkins, 487 U.S. 42, 48 (1988)).  This requires the plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights.  Jones, 297 F.3d at 934; see also Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)) (a deprivation occurs if the defendant "does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do").  In other words, to state a claim for relief under § 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of his federal rights.

An officer may be liable for the conduct of others where he or she has been an "integral participant" in the alleged constitutional violation.  Blankenhorn v. City of Orange, 485 F.3d 463,

---

[5] The Court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. See Gillespie, 629 F.2d at 642.

481 n.12 (9th Cir. 2007).  " '[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation," Boyd v. Benton Cnty., 374 F.3d 773, 780 (9th Cir. 2004), "[b]ut it does require some fundamental involvement in the conduct that allegedly caused the violation," Blankenhorn, 485 F.3d at 481 n.12.  An officer who provides armed backup or who participated in a police action with knowledge that a particular form of force would be used but without objecting may be liable under the doctrine of integral participation.  Boyd, 374 F.3d at 780 (citing James ex rel. James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) and Melear v. Spears, 862 F.2d 1177, 1186 (5th Cir. 1989)).

### 1.   Claims Against the Modesto Police Department

Local governmental units, such as counties and cities, are considered "persons" within the meaning of § 1983.  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 70 (1989); Cnty. of Los Angeles v. Superior Ct., 68 Cal. App. 4th 1166, 1171 (1998).  Local government sub-units, however, are not.  See Sanders v. Aranas, No. 1:06-CV-1574 AWI SMS, 2008 WL 268972, at *3 (E.D. Cal. Jan. 29, 2008) (Fresno Police Department cannot be sued under § 1983 because it is a sub-division of the City of Fresno); Garcia v. City of Merced, 637 F. Supp. 2d 731, 760 (E.D. Cal. 2008) (dismissing City of Merced Police Department as improper defendant under § 1983); Nelson v. Cnty. of Sacramento, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013); Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (affirming district court's dismissal of claims against a county sheriff's department).

The Court therefore finds that, as a subdivision of the City of Modesto, the Modesto Police Department is not a proper defendant on Plaintiff's § 1983 claims.  Accordingly, Plaintiff fails to state any federal claim against Defendant Modesto Police Department.  The Court notes, however, that this finding does not end the inquiry regarding the Modesto Police Department's status as a defendant in this case with respect to Plaintiff's state law claims, which will be addressed herein.

### 2.   Claims Against the City of Modesto (Municipal Liability Under § 1983)

While local governmental units are considered "persons" within the meaning of § 1983, a local government unit may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91

(1978); see also Bd. of Cnty. Comm'rs v. Brown (Brown), 520 U.S. 397, 403 (1997).  Thus, municipal liability must rest on the actions of the municipality, and not of the actions of its employees or officers.  See Brown at 403.

A Monell claim may be stated under three theories of municipal liability: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct.  Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1249–50 (9th Cir. 2010).

A plaintiff may establish municipal liability based on an official policy or custom by demonstrating "the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.' "  Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & Cnty. of S.F., 308 F.3d 968, 984–85 (9th Cir. 2002)).  To establish liability for governmental entities under this theory, a plaintiff must show (1) that the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation."  Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted).

A municipality's failure to train its police officers may also amount to a policy of deliberate indifference.  See Price, 513 F.3d at 973.  To state a claim for failure to train, a plaintiff must show (1) "the existing training program" is inadequate "in relation to the tasks the particular officers must perform"; (2) the officials have been deliberately indifferent "to the rights of persons with whom the police come into contact"; and (3) the inadequacy of the training "actually caused the deprivation of the alleged constitutional right."  Merritt v. Cnty. of L.A., 875 F.2d 765, 770 (9th Cir. 1989) (internal citations and quotation marks omitted).

Finally, a plaintiff may claim Monell liability where an "official with final policy-making authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it."  Gillette

8

1  v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992).  A policymaker's "knowledge of an

2  unconstitutional act does not, by itself, constitute ratification."  Christie v. Iopa, 176 F.3d 1231,

3  1239 (9th Cir. 1999). "[A] policymaker's mere refusal to overrule a subordinate's completed act

4  does not constitute approval."  Id.  Rather, ratification requires the authorized policymaker to make

5  a "conscious, affirmative choice."  Gillette, 979 F.2d at 1347.  Ratification "and thus the existence

6  of a *de facto* policy or custom, can be shown by a municipality's post-event conduct, including its

7  conduct in an investigation of the incident."  Dorger v. City of Napa, No. 12-cv-440 YGR, 2012

8  WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (citing Henry v. Cnty. of Shasta, 132 F.3d 512, 518

9  (9th Cir. 1997)).  See Christie, 176 F.3d at 1240 (finding failure to discipline along with after-the-

10  fact conduct indicating policymaker agreed with subordinate's conduct sufficient to show

11  ratification).

12       To plead a Monell claim with sufficient particularity under the requirements set forth by

13  Iqbal and Twombly, allegations in a complaint "may not simply recite the elements of a cause of

14  action, but must contain sufficient allegations of underlying facts to give fair notice and to enable

15  the opposing party to defend itself effectively."  AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d

16  631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

17       Here, Plaintiff does not identify any official policy or custom, nor does he allege any facts

18  showing that he was arrested pursuant to an official policy or custom.  Nor does Plaintiff allege any

19  facts showing that he was arrested due to any lack of training on the part of Minnis-Swass.  Finally,

20  Plaintiff alleges Minnis-Swass contacted his superior officer prior to arresting Plaintiff to confirm

21  that he should arrest Plaintiff for failure to produce a driver's license, but Plaintiff does not allege

22  any facts showing that Minnis-Swass's supervisor was an "official with final policy-making

23  authority" capable of ratifying the arrest, or other facts showing that any "ratification" occurred.

24  Gillette, 979 F.2d at 1346–47.  Accordingly, Plaintiff fails to state any claim for municipal liability

25  under § 1983 against Defendant City of Modesto.[6]

26       Having found Plaintiff fails to state any federal claims against Defendants Modesto Police

27

28  _____

[6] As with the Modesto Police Department, however, this finding does not end the inquiry regarding the City of Modesto's status as a defendant in this case with respect to Plaintiff's state law claims.

Department or City of Modesto, the Court considers Plaintiff's § 1983 claims as asserted against Defendant Officer Minnis-Swass only.

### 3.    42 U.S.C. § 1983: False Arrest (Count I)

Plaintiff claims he was unlawfully detained and falsely arrested without legal justification or probable cause, in violation of his First, Fourth, and Fifth Amendment rights.  (Compl. ¶¶ 27–32.)  As discussed herein, unlawful detainments and arrests fall under the Fourth, not First or Fifth Amendments; therefore, Plaintiff fails to state a claim for false detainment/arrest under the First or Fifth Amendments.

As to Plaintiff's claim under the Fourth Amendment, the complaint is devoid of factual allegations regarding why the detention or arrest was unlawful.  Further, the complaint reveals that Minnis Swass had reasonable suspicion and probable cause to detain and arrest Plaintiff.

### a.    Detention

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  U.S. v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)).  Peace officers may conduct a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that "criminal activity may be afoot."  Terry, 392 U.S. at 30.  "Reasonable suspicion exists if specific, articulable facts . . . together with objective and reasonable inferences suggest that the persons detained by the police are engaged in criminal activity."  U.S. v. Hartz, 458 F.3d 1011, 1017 (9th Cir. 2006) (internal quotation marks omitted) (alteration in original).  In determining whether an officer had reasonable suspicion to conduct a stop of a vehicle, the Court must consider the totality of the circumstances involved in the stop.  Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1496 (9th Cir. 1996).  The reasonable suspicion standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."  Navarette v. California, 572 U.S. 393, 397 (2014) (citation and internal quotation marks omitted).

California Vehicle Code § 4000 states a person may not drive any motor vehicle unless it is registered and the appropriate fees have been paid.  Cal. Veh. Code § 4000(a)(1).  Stopping an

1    automobile and detaining a driver to check his driver's license and vehicle registration are not

2    unreasonable under the Fourth Amendment when there is "articulable and reasonable suspicion that

3    a motorist is unlicensed or that an automobile is not registered." Delaware v. Prouse, 440 U.S. 648,

4    663 (1979); see Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) (investigatory stop was

5    constitutional when automobile had "expired license tags in violation of Pennsylvania Motor

6    Code"); see also Pickett v. Nguyen, No. 15-cv-04421-WHO, 2016 WL 7406438, at *3–4 (N.D.

7    Cal. Dec. 22, 2016) ("an expired vehicle registration justifies a traffic stop under the Fourth

8    Amendment" and, moreover, "an arrest for any criminal offense, however minor, is sufficient under

9    the Fourth Amendment.").

10        According to the complaint, Plaintiff's vehicle registration was expired. (See Compl. ¶ 28.)

11   Plaintiff acknowledges that he was pulled over "for a suspected traffic violation" (id. at ¶ 8), the

12   citation attached as an exhibit to the complaint shows Plaintiff's registration tags expired nearly six

13   months prior to the date of the incident (Ex. D, ECF No. 1 at 25–26), and Plaintiff does not attempt

14   to dispute that his registration tags were expired. Minnis-Swass's detention of Plaintiff was thus

15   supported by reasonable suspicion. Therefore, Plaintiff fails to state a claim for unlawful detention

16   based on his traffic stop.

17        **b.    Arrest**

18        The Fourth Amendment prohibits arrests without probable cause or other justification.

19   Dubner v. City & Cnty. of S.F., 266 F.3d 959, 964 (9th Cir. 2001). An arrest is supported by

20   probable cause if, under the totality of the circumstances, a prudent person would have concluded

21   that there was a fair probability the suspect had committed a crime. Beck v. Ohio, 379 U.S. 89, 91

22   (1964); Luchtel v. Hagemann, 623 F.3d 975, 979 (9th Cir. 2010); Gillan v. City of San Marino, 147

23   Cal. App. 4th 1033, 1044 (2007) ("Probable cause exists when the facts known to the arresting

24   officer would persuade someone of 'reasonable caution' that the person to be arrested has

25   committed a crime."). Thus, to state a cognizable claim for false arrest, Plaintiff must allege facts

26   showing that no probable cause existed to arrest him. See Cabrera v. City of Huntington Park, 159

27   F.3d 374, 380 (9th Cir. 1998).

28        As previously noted, the complaint and exhibits attached to the complaint allege Plaintiff

11

1   was pulled over for expired vehicle tags and arrested after refusing to present, upon multiple

2   requests, his driver's license to Minnis-Swass.  To the extent Plaintiff was arrested for expired

3   registration tags, the Ninth Circuit has held that, even when an arrest for a code violation was not

4   authorized under California law, the arrest nonetheless did not violate the Fourth Amendment and

5   could not sustain a § 1983 claim.  Edgerly v. City & Cnty. of S.F., 599 F.3d 946, 955–56 (9th Cir.

6   2010) (finding probable cause existed to believe the plaintiff was violating Cal. Pen. Code § 602.8

7   (for trespass, an infraction) and affirming judgment as a matter of law on plaintiff's § 1983 Fourth

8   Amendment arrest claim); Virginia v. Moore, 553 U.S. 164, 171 (2008) (officers did not violate

9   Fourth Amendment by arresting motorist whom they believed was driving with a suspended

10  license, although under state law officers should have issued a summons rather than make an arrest);

11  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (Fourth Amendment does not forbid

12  warrantless arrest for "even a very minor criminal offense" committed in arresting officer's

13  presence, such as seatbelt violation; custodial arrest and one-hour jail detention for offense of

14  driving without a seatbelt held constitutional); People v. McKay, 27 Cal. 4th 601, 607 (2002) (citing

15  U.S. v. McFadden, 238 F.3d 198, 204 (2d Cir. 2001)) ("[T]here is nothing inherently

16  unconstitutional about effecting a custodial arrest for a fine-only offense.").

17          Additionally, probable cause to arrest existed based on Plaintiff's refusal to comply with

18  Minnis-Swass's orders to produce a driver's license.  It is well established that, if a Terry stop is

19  "justified at its inception," it is reasonable for an officer to ask "questions concerning a suspect's

20  identity" and that "the suspect can be arrested [under state law] and prosecuted for refusal to

21  answer."  Hiibel v. Sixth Judicial Dist. Ct.of Nevada, Humboldt Cnty., 542 U.S. 177, 185–86

22  (2004).  State laws authorizing such arrests, which "properly balance[ ] the intrusion on the

23  individual's interests against the promotion of legitimate government interests," are constitutional

24  and do not offend the Fourth Amendment.  Id. at 178, 188.  California Penal Code § 853.5, for

25  example, states in relation to an "arrest[ ] for an infraction," officers may "require the arrestee to

26  present his or her driver's license or other satisfactory evidence of his or her identity for

27  examination and to sign a written promise to appear contained in a notice to appear . . . .  Only if

28  the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide

a thumbprint or fingerprint may the arrestee be taken into custody."  This law, intended to limit "the authority to execute custodial arrests for offenses so minor that they are designated as infractions" (U.S. v. Mota, 982 F.2d 1384, 1388 (9th Cir. 1993)), permits officers to arrest a non-compliant suspect without a warrant "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence."  Atwater, 532 U.S. at 354; see also Salvatto v. Cnty. of Solano, 2007 WL 926788, at *6 (E.D. Cal. Mar. 27, 2007) ("[F]ailure to produce satisfactory identification allows an officer to make an arrest without violating the Fourth Amendment.") (citations omitted); see also Cal. Penal Code § 148(a)(1); (permits fine and imprisonment of a person who "willfully resists, delays, or obstructs" a police officer "in the discharge or attempt to discharge any duty of his or her office or employment"); Davis v. Cnty. of San Bernardino, No. EDCV 08-1262 SVW (SSx), 2009 WL 3838287, at *6 (C.D. Cal. Nov. 13, 2009), aff'd, 442 F. App'x 300 (9th Cir. 2011) ("refusal to comply with police orders falls within the scope of the statute if it impedes the officer in the conduct of his duties.") (emphasis omitted).

To determine whether the conversion of a detention to an arrest is justified, the Court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal citation omitted).  Here, prior to his arrest, Plaintiff alleges Minnis-Swass asked him at least twice to produce his driver's license and Plaintiff refused to do so, first by arguing that he had not been "driving," and second by producing his "fee schedule," "Notice to Arresting Officer," and "sovereign identity" instead of his California driver's license.  (See compl. ¶¶ 9–14.)  Defendants, therefore, did not have enough information to issue a citation.  Minnis-Swass also warned Plaintiff that "he [needed] to see Plaintiff's driver's license or else he would have to arrest him."  (Id. at ¶ 12.)

Under the totality of these circumstances, Defendants had sufficient probable cause to believe Plaintiff had violated California Vehicle Code § 4000 by driving without valid registration tags, as well as cause to arrest Plaintiff given his additional refusal to provide identification. See Dubner, 266 F.3d at 966 ("Probable cause exists when, under the totality of the circumstances known to the arresting officers . . . a prudent person would believe the suspect had committed a

1   crime.").  The arrest of Plaintiff after he refused to produce his California driver's license was

2   therefore reasonable.

3       Thus, viewing the allegations as true and construing all inferences in the light most

4   favorable to Plaintiff, Plaintiff has not alleged facts showing he was arrested without probable cause

5   or that the detention or arrest were unreasonable.  Accordingly, Plaintiff fails to state a § 1983 claim

6   for false arrest.

7       4.      42 U.S.C.§ 1983: Due Process (Count II)

8       "The Fourteenth Amendment's Due Process Clause protects persons against deprivations

9   of life, liberty, or property; and those who seek to invoke its procedural protection must establish

10  that one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  The due

11  process clause of the Fourteenth Amendment protects two distinct but related rights: procedural

12  due process and substantive due process.  Albright v. Oliver, 510 U.S. 266, 272 (1994).

13      To state a procedural due process claim, Plaintiff must establish three elements: (1) a liberty

14  or property interest protected by the Constitution; (2) a deprivation of the interest by the

15  government; and (3) lack of process."  Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir.

16  1993).

17      To state a substantive due process claim, a plaintiff must plead both a deprivation of his

18  liberty and conscience shocking behavior by the government.  Brittain v. Hansen, 451 F.3d 982,

19  991 (9th Cir. 2006).  More specifically, a plaintiff "must plead that the government's action was

20  'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety,

21  morals, or general welfare.' "  Lebbos v. Judges of Superior Ct., 883 F.2d 810, 818 (9th Cir. 1989)

22  (quoted source omitted).  To meet the "arbitrary and unreasonable" element, a plaintiff may plead

23  either: (1) an official acting with deliberate indifference to the risk of harm; or (2) a more

24  demanding showing that the official acted with the purpose to harm the plaintiff for reasons

25  unrelated to legitimate law enforcement objectives.  Porter v. Osborn, 546 F.3d 1131, 1137 (9th

26  Cir. 2008); Tatum v. Moody, 768 F.3d 806, 820 (9th Cir. 2014).  Which test to apply depends on

27  whether the circumstances are such that "actual deliberation is practical."  Porter, 546 F.3d at 1137.

28  In the circumstances here, where the police officers have the opportunity for actual deliberation, id.

14

1  at 1138, the deliberate indifference standard would apply.  Lemire v. Cal. Dept. of Corr. & Rehab.,

2  726 F.3d 1062, 1075 (9th Cir. 2013).

3         Furthermore, the Supreme Court has held that if a constitutional claim is covered by a

4  specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under

5  the standard appropriate to that specific provision, not under the rubric of substantive due process."

6  U.S. v. Lanier, 520 U.S. 259, 272, n.7 (1997) (citing Graham, 490 U.S. at 394); see also Cnty. of

7  Sacramento v. Lewis, 523 U.S. 833, 842–43 (1998) (citing Graham, 490 U.S. at 395 ("*All* claims

8  that law enforcement officers have used excessive force — deadly or not — in the course of an

9  arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

10  Amendment and its 'reasonableness' standard, rather than under a 'substantive due process'

11  approach.") (emphases in original)); Price, 513 F.3d at 967 (Claims alleging excessive force in

12  making an arrest are analyzed under the Fourth Amendment "objective reasonableness" standard

13  rather than under a substantive due process standard); Hazlett v. Dean, No. CIV 2:12-01782 WBS

14  DAD, 2013 WL 1749924, at *2 (E.D. Cal. Apr. 23, 2013) (dismissing "generalized substantive due

15  process claims under the Fourteenth Amendment" where the First and Fourth Amendments were

16  "explicit textual sources of constitutional protection in this action"); see also Tomelloso v. City of

17  Vacaville, No. 2:21-cv-00507-MCE-JDP, 2021 WL 5883039, at *2 (E.D. Cal. Dec. 13, 2021)

18  (holding detention of only 45–90 minutes was too brief to trigger due process concerns as opposed

19  to the search and seizure protections guaranteed by the Fourth Amendment, but acknowledging a

20  "Fourteenth Amendment due process claim may exist if, after the lapse of a certain amount of time,

21  officials fail to release a detainee who they knew, or should have known, was so entitled.") (citing

22  Lee, 250 F.3d at 668).

23         Plaintiff claims Defendants deprived him of due process in violation of the Fourth and Fifth

24  Amendments when they (1) "failed to serve a bonded claim or charging instrument (warrant for

25  arrest of plaintiff)," (2) "failed to produce a corpus delecti or any witness to a public threat to

26  constitute any criminal activity of the plaintiff," (3) failed to give Miranda warnings, (4) searched

27  and seized Plaintiff's property without probable cause, (5) prevented Plaintiff from moving about

28  freely by placing handcuffs on him, and (6) forced Plaintiff to sign his citation "under duress,

1   coercion and threat of slavery."  (Compl. ¶¶ 34–35.)

2        As demonstrated by the aforementioned authorities, a due process claim is not properly

3   brought under the Fourth or Fifth Amendments but by the Fourteenth Amendment.  Accordingly,

4   Plaintiff fails to state a cognizable claim for due process violations under the Fourth and Fifth

5   Amendment (Count II).  Furthermore, Plaintiff's due process claim fails because its allegations are

6   all conclusory.  Iqbal, 556 U.S. at 681.  First and foremost, Plaintiff does not indicate whether he

7   is asserting a procedural due process or substantive due process claim.  Further, it is entirely unclear

8   from the pleading which liberty interest/s Plaintiff was allegedly deprived of, which Defendant's

9   actions caused the deprivation, or what procedural protections (if any) he was denied with respect

10  to each alleged deprivation.  Finally, to the extent Plaintiff intends to assert a due process claim

11  related to the manner in which he was detained, arrested, searched, handcuffed, or had personal

12  property seized, all such claims must turn on an application of the Fourth Amendment's

13  reasonableness standard governing searches and seizures, not the due process standard of liability

14  for constitutionally arbitrary executive action.  To the extent Plaintiff elects to amend his due

15  process claim, Plaintiff should plead any procedural due process claim separately from any

16  substantive due process claim.

17        5.     Brady Violation (Count II)

18        Concurrent with his due process claim in Count II, Plaintiff also attempts to assert a § 1983

19  claim for a Brady violation.  (See Compl. 6.)  This claim is not supported in the law.

20        A Brady violation, derived from the Supreme Court case Brady v. Maryland, 373 U.S. 83

21  (1963), refers to the suppression of "material evidence helpful to the accused, whether at trial or on

22  a motion to suppress," and imposes an obligation on the government to provide favorable material

23  evidence to the defendant in a criminal setting.  See U.S. v. Barton, 995 F.2d 931, 934–35 (9th Cir.

24  1993); U.S. v. Gamez-Orduno, 235 F.3d 453, 461 (9th Cir. 2000).  "To establish a Brady violation,

25  a defendant must show that: (1) the evidence at issue is favorable to the accused, either because it

26  is exculpatory or because it is impeaching; (2) the evidence was suppressed by the government,

27  regardless of whether the suppression was willful or inadvertent; and (3) the evidence is material

28  to the guilt or innocence of the defendant."  U.S. v. Sedaghaty, 728 F.3d 885, 899 (9th Cir. 2013)

1  (citing Brady, 373 U.S. at 87).

2  Clearly, Brady is inapplicable to the instant case, where (1) the instant matter is a civil, not

3  criminal, action (2) Plaintiff has not been criminally charged, and (3) no criminal case exists so

4  there is no exculpatory or impeaching evidence and no suppression issue.  Accordingly, the Court

5  finds Plaintiff fails to state a claim for a Brady violation.

6           6.       42 U.S.C.§ 1983: Conspiracy to Commit Constitutional Violations (Count IV)

7  In order to allege a conspiracy under § 1983, a plaintiff must show "an agreement or meeting

8  of the minds to violate constitutional rights."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002)

9  (internal quotation marks and citation omitted).  "To be liable, each participant in the conspiracy

10  need not know the exact details of the plan, but each participant must at least share the common

11  objective of the conspiracy."  Id. at 441.  This agreement or meeting of the minds may be inferred

12  based on circumstantial evidence, such as the actions of the defendants.  Mendocino Envtl. Ctr. v.

13  Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999).   In addition, a conspiracy to violate

14  constitutional rights must be predicated on a viable underlying constitutional claim.  See Thornton

15  v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005).   The claim requires "an actual

16  deprivation of constitutional rights."  Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006).  "The

17  defendants must have, by some concerted action, intended to accomplish some unlawful objective

18  for the purpose of harming another which results in damage."  Mendocino Envtl. Ctr., 192 F.3d at

19  1301.

20  Plaintiff claims Minnis-Swass and the two Doe officer defendants conspired to violate

21  Plaintiff's constitutional rights by "forming a verbal agreement" to arrest Plaintiff for failing to

22  produce his driver's license and agreeing to not report each other's conduct, including the use of

23  force, and agreeing to hide or destroy any evidence of wrongdoing.  (See Compl. ¶¶ 15, 47.)  This

24  statement is wholly conclusory and unsupported by any factual allegations.  The Court therefore

25  finds this allegation is insufficient to state a claim for § 1983 conspiracy.

26  Further, Plaintiff has not alleged sufficient facts to establish an underlying constitutional

27  violation.  See Dixon v. City of Lawton, 898 F.2d 1443, 1447–49 (10th Cir. 1990) ("[T]o recover

28  under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also

an actual deprivation of rights; pleading and proof of one without the other will be insufficient.")

(citing Dooley v. Reiss, 736 F.2d 1392, 1395 (9th Cir. 1984).  Here, Plaintiff has alleged facts

establishing probable cause for the detention and arrest; therefore, even if the officers agreed to

arrest Plaintiff no unlawful objective has been identified.  Second, the complaint is devoid of any

factual allegations regarding the Doe officers other than that they arrived on scene at the time of

the incident.  Thus, no "concerted action" has been alleged.  For these reasons as well, the Court

finds Plaintiff fails to state a claim for § 1983 civil conspiracy.

7.      42 U.S.C. § 1983: Failure to Intervene (Count V)

"[P]olice officers have a duty to [intervene] when their fellow officers violate the

constitutional rights of a suspect or other citizen." Cunningham v. Gates, 229 F.3d 1271, 1289 (9th

Cir. 2000), as amended (Oct. 31, 2000).  However, an officer can only be held liable for failing to

intervene if the officer had a "realistic opportunity" to do so.  Id. at 1290; Garlick v. County of

Kern, 167 F. Supp. 3d 1117, 1161 (E.D. Cal. 2016).  Thus, officers who are not present at the time

of a constitutional violation have no realistic opportunity to intervene.  Cunningham, 228 F.3d at

1290.  Moreover, a police officer who is "merely a bystander" to another officer's conduct is

insufficient to establish liability under section 1983. Hopkins v. Bonvicino, 573 F.3d 752, 770 (9th

Cir. 2009) (quoting Chuman v. Wright, 76 F.3d 292 (9th Cir. 1996)).  Or, "if a constitutional

violation occurs too quickly, there may no realistic opportunity to intercede to prevent the

violation." Freeland v. Sacramento City Police Dep't, No. CIV S-06-0187 LKK DAD P, 2010 WL

408908, at *5 (E.D. Cal. Jan. 29, 2010) (citing Knapps v. City of Oakland, 647 F. Supp. 2d 1129,

1159–60 (N.D. Cal. 2009)).  Thus, "[t]o state a claim for failure to intervene, Plaintiff must allege

circumstances showing that [the officer defendant/s] had an opportunity to intervene and prevent

or curtail the violation (e.g., enough time to observe what was happening and intervene to stop it),

but failed to do so." Gonzales v. Cate, No. 1:06-cv-1420-AWI-MJS (PC), 2011 WL 1332174, at

*3 (E.D. Cal. Apr. 5, 2011); Claiborne v. Blauser, No. 2:10-cv-2427 LKK EFB P, 2013 WL

1384995, at *5 (E.D. Cal. Apr. 4, 2013).

The complaint lacks factual allegations that any of the individual officers were on notice

that Plaintiff's constitutional rights had been or were being deprived.  Plaintiff does not identify

which officer Defendant/s allegedly failed to intervene, nor does he identify what alleged violation of his rights the officer/s should have prevented or curtailed.  See Claiborne, 2013 WL 1384995, at *5 ("A defendant is liable for failing to intervene only where there has been an underlying constitutional violation warranting intervention").  Therefore, there are no factual allegations showing that any Defendants could have intervened.  Accordingly, Plaintiff does not allege sufficient facts to support a cognizable claim for failure to intervene.

8.    Excessive Force

In the complaint, under Count II (Due Process/Brady Violation) and Count VII (Intentional Infliction of Emotional Distress), Plaintiff alleges he was put in tight handcuffs that were not properly locked so that they continually got tighter and caused Plaintiff pain and discomfort.  (Compl. ¶¶ 34(e), 61(b).)  Further, Plaintiff alleges that when he requested the handcuffs be loosened, his request was denied.  (Id. at ¶ 61(c).)  Plaintiff does not assert a cause of action for excessive force and it is unclear from the pleading whether he intended to allege it as a separate and distinct claim.  However, Plaintiff is proceeding *pro se* and his complaint is to be liberally construed.  Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014).  Therefore, the Court will evaluate whether Plaintiff may state an excessive force claim.

The use of excessive force by law enforcement officers in effectuating an arrest states a valid claim under § 1983.  See Rutherford v. City of Berkeley, 780 F.2d 1444, 1447 (9th Cir. 1986).  To state a claim for imposition of excessive force, Plaintiff must allege facts showing that he (1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable.  See Heitschmidt v. City of Houston, 161 F.3d 834, 839 (5th Cir. 1998).

An excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard.  Graham, 490 U.S. at 388.  The Ninth Circuit has articulated a three-step analysis to evaluate excessive force claims under the framework set forth by the Supreme Court in Graham v. Connor.  See Thompson v. Rahr, 885 F.3d 582, 586 (9th Cir. 2018) (citing Espinosa v. City & Cty. of S.F., 598 F.3d 528, 537 (9th Cir. 2010)).  First, the Court must assess "the severity of the intrusion" "by considering 'the type and amount of force inflicted.'"  Id.  Second, the Court

must evaluate the government's interest "by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." Espinosa, 598 F.3d at 537 (quoting Graham, 490 U.S. at 396). Third, the Court must balance "the gravity of the intrusion on the individual against the government's need for that intrusion . . . to determine whether the force used was 'greater than is reasonable under the circumstances.'" Id. (citing Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002)).

Because reasonableness "is not capable of precise definition or mechanical application," the inquiry requires "attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. Id. (citing Johnson v. Glick, 481 F. 2d 1028, 1033 (2nd Cir. 1973)). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Id. at 396–97; see also Ames v. King Cnty., 846 F.3d 340, 348 (9th Cir. 2017). Determination of reasonableness therefore requires consideration of the totality of the circumstances. Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011). Consequently, courts consider other factors, such as the availability of alternative methods of capturing or detaining the suspect in determining reasonableness. Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994), cert. denied, 513 U.S. 1148 (1995).

"It is well-established that overly tight handcuffing can constitute excessive force," particularly where the suspect tells the officer the handcuffs are too tight and the officer refuses to loosen them. Wall v. Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004); see also Alexander v. Cnty. of L.A., 64 F.3d 1315, 1322–23 (9th Cir. 1995) (reversing dismissal of excessive force claim where plaintiff told officers his handcuffs were too tight and officers denied plaintiff's request to remove or loosen the handcuffs for 35–40 minutes, resulting in plaintiff's hands swelling and turning blue with long-term injuries); Heitschmidt, 161 F.3d at 839–40 (denying qualified

1   immunity to officers who placed and kept the plaintiff in tight handcuffs for several hours).

2   Here, Plaintiff alleges his handcuffs were too tight and painful, and when he asked that they

3   be loosened his request was denied.  (Compl. ¶¶ 34(e), 61(b)–(c).)  Further, Plaintiff alleges he was

4   held in custody for about an hour in physical pain.  (Id. at 61(d).)  These allegations support the

5   objectively unreasonable element of an excessive force claim.  Further, there are no allegations

6   showing that the officers believed Plaintiff was dangerous or attempting to flee.  And expired

7   registration tags, an infraction, is not a severe crime but punishable by citation.

8   However, while Plaintiff alleges Minnis-Swass was the officer that handcuffed him,

9   Plaintiff does not allege facts showing to which officer Plaintiff directed his request to loosen the

10   handcuffs, or which officer/s denied the request.  Because § 1983 requires a plaintiff to link alleged

11   conduct to specific defendants, Plaintiff's failure to identify the officer/s that refused to loosen his

12   handcuffs is fatal to his claim.  Benavidez, 993 F.3d at 1144; Long, 442 F.3d at 1185; West, 487

13   U.S. at 48.  Nor does the complaint allege facts showing Plaintiff suffered any injury beyond a "de

14   minimis" or temporary discomfort while handcuffed, though the Court acknowledges the absence

15   of injury alone does not negate the viability of an excessive force claim.  See Wilkins v. Gaddy,

16   559 U.S. 34, 37–38 (2010) (noting, in Eighth Amendment excessive force claim, the extent of injury

17   may provide some indication of the amount of force applied, but it is not dispositive to the inquiry

18   of whether or not the force used was excessive).

19   At bottom, Plaintiff does not allege sufficient facts about the circumstances under which he

20   was handcuffed to satisfy all of the elements of an excessive force claim and he fails to satisfy the

21   linkage requirement of § 1983.  For these reasons as well, the Court finds Plaintiff has not alleged

22   sufficient facts here to state a cognizable claim for excessive force.

23   9.   Search and Seizure under the Fourth Amendment

24   Plaintiff also alleges under Count II (Due Process/Brady Violation) and Count VII

25   (Intentional Infliction of Emotional Distress) that Defendants searched him and searched and seized

26   his private property without probable cause in violation of his due process rights.  (Compl. ¶¶ 34(d),

27   61(f).)  However, as the Court previously noted, Plaintiff's claim based on the search and seizure

28   of his person or his personal property is not properly brought as a Fourteenth Amendment due

1  process claim but must be brought under the Fourth Amendment.  Graham, 490 U.S. at 395.

2  Therefore, Plaintiff's Count II fails to state a cognizable claim.

3         Nonetheless, because he is proceeding *pro se*, Plaintiff will be granted leave to amend.  If

4  Plaintiff seeks to bring a search and/or seizure claim pursuant to the Fourth Amendment, he must

5  assert the claim clearly, as a separate cause of action.  The following legal standard for Fourth

6  Amendment searches and seizures is provided herein.

7         "The Fourth Amendment proscribes only 'unreasonable' searches and seizures."  Franklin

8  v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994).  The reasonableness of a search or seizure depends

9  "not only on when [it] is made, but also how it is carried out."  Tennessee v. Garner, 471 U.S. 1, 8

10 (1985).  Thus, reasonableness depends upon the facts and circumstances of each case.  Harris v.

11 U.S., 331 U.S. 145, 150 (1947).  To determine whether a search is reasonable under the Fourth

12 Amendment, the Court balances "the need for the particular search against the invasion of personal

13 rights that the search entails."  Way v. Cnty. of Ventura, 445 F.3d 1157, 1160 (9th Cir. 2006)

14 (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)).  Generally, a search is reasonable if: (1) there

15 is probable cause to conduct the search; (2) there is a warrant, or circumstances justifying a

16 warrantless search; and (3) the procedures used to search are reasonable.  Juran v. Independence

17 Or. Cent. Sch. Dist. 13J, 898 F. Supp. 728, 731 (D. Or. 1995) (citing Schmerber v. California, 384

18 U.S. 757, 769–71 (1966)).

19        "It is clearly established that an officer may not conduct a 'search incident to citation' absent

20 other justification."  Sameth v. Cnty. of L.A., No. CV 10-6565-ODW (RZx), 2011 WL 6937275,

21 at *4 (C.D. Cal. Dec. 29, 2011) (citing Knowles v. Iowa, 525 U.S. 113, 117–19 (1998)).  However,

22 "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth

23 Amendment; that intrusion being lawful, a search incident to the arrest requires no additional

24 justification."  U.S. v. Robinson, 414 U.S. 218, 235 (1973); see also U.S. v. Benton, 407 Fed.

25 App'x. 218 (2011) (citing Chimel v. California, 395 U.S. 752, 763 (1969)).  Once a suspect is

26 legally in custody, officers may search the suspect and the contents of all containers found in his

27 possession, including highly personal items such as a wallet or backpack.  U.S. v. Ziller, 623 F.2d

28 562, 563 (9th Cir. 1980); see Atwater, 532 U.S. at 364.  Absent a search conducted in a particularly

"extraordinary manner, unusually harmful to [the plaintiff's] privacy or even physical interests," the "probable cause to believe the law has been broken 'outbalances' private interest in avoiding police contact."  See Whren v. U.S., 517 U.S. 806, 818 (1996).

Additionally, when a suspect refuses to produce identification during a detention or arrest, officers may conduct limited searches, including looking in wallets and vehicle compartments in an effort to establish identity.  See Knowles, 525 U.S. at 118; U.S. v. $109,179 in U.S. Currency, 228 F.3d 1080, 1086 (9th Cir. 2000) (finding an "intrusion upon [a detained suspect's] vehicle" that is "narrowly tailored to accomplish the purpose of the legitimate police investigation['s]" need to "identify [the suspect] through his ownership" does not violate the Fourth Amendment); Quezada v. Hubbard, No. C 01-02303 CRB, 2002 WL 1598873, at *4 (N.D. Cal. July 18, 2002) (upholding warrantless search of "driver's seat armrest, which is a likely place for storage of a license and registration").

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  U.S. v. Jacobsen, 466 U.S. 109, 113 (1984) (footnote omitted); Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005).  Generally, "in the context of personal property, and particularly containers, the Fourth Amendment challenge is typically to the subsequent search of the container rather than to its initial seizure" and a warrantless "seizure of personal property [i]s per se unreasonable."  U.S. v. Place, 462 U.S. 696, 700–01 (1983).  But under very limited circumstances, property may be seized without a warrant or probable cause.  Id. at 701–04 (exploring exception to the warrant requirement and establishing the right to seize property under Terry).  "When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause."  Id. at 703.  To determine if such a seizure is constitutional, the Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  Id.  The need to pursue an investigation of a suspected crime and the need to ensure officer safety, for example, are well-established important governmental interests.  See id. at 701–04; U.S. v. Guzman-Padilla, 573 F.3d 865, 884 (9th Cir. 2009); Alexander, 64 F.3d at 1320.  Thus,

1  "[t]he reasonableness of a seizure is generally analyzed on a case-by-case basis, not according to

2  bright-line rules."  Terry, 392 U.S. at 17, 20–21.

3       **C.**     **State Law Claims**

4       1.     State Claims Against Public Agencies: Government Claims Act

5       The California Government Claims Act requires that a tort claim against a public entity or

6  its employees be presented to the California Victim Compensation and Government Claims Board

7  no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2,

8  945.4, 950–950.2.  Presentation of a written claim, and action on or rejection of the claim are

9  conditions precedent to suit.  State v. Superior Ct. of Kings County (Bodde), 32 Cal. 4th 1234, 1239

10  (Cal. 2004).  The "failure to timely present a claim for money or damages to a public entity bars a

11  plaintiff from filing a lawsuit against that entity."  Id. at 1239; Karim-Panahi v. L.A. Police Dep't,

12  839 F.2d 621, 627 (9th Cir. 1988).

13       Further, to state a tort claim against a public employee, a plaintiff must also *allege*

14  compliance with the California Tort Claims Act.  Cal. Gov't Code § 950.6; Bodde, 32 Cal. 4th at

15  1244.  "[F]ailure to allege facts demonstrating or excusing compliance with the requirement

16  subjects a complaint to [dismissal] for failure to state a cause of action."  Bodde, 32 Cal. 4th at

17  1239; see also Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441,

18  446–47 (2004) (state claims may also be dismissed if the allegations in the complaint are not fairly

19  reflected in the state tort claim).  The requirement that a plaintiff must affirmatively allege

20  compliance with the Government Claims Act applies to state law claims brought in federal court.

21  Karim-Panahi, 839 F.2d at 627.

22       Here, Plaintiff purports to raise state law claims against the City of Modesto, the Modesto

23  Police Department, and Modesto police officers — each of whom is covered by the Government

24  Claims Act.  The complaint, however, does not allege facts demonstrating Plaintiff complied with

25  the tort claims act prior to asserting his state law claims against Defendants.  Therefore, Plaintiff

26  fails to state any state law claim against any of the Defendants named in this action.

27       Nonetheless, in the event that Plaintiff may amend his complaint to sufficiently show he

28  complied with the Government Claims Act or was otherwise excused from compliance, the Court

1   will also address the sufficiency of Plaintiff's allegations with respect to the underlying state law

2   claims asserted in the complaint.

3           2.      (False Arrest)/False Imprisonment (Count III)

4           In addition to his § 1983 false arrest/imprisonment claim, Plaintiff brings a state law claim

5   for false imprisonment based on the alleged lack of probable cause to arrest.  (See compl. ¶¶ 41–

6   45.)

7           Under California law, false arrest is not a separate tort, but a subcategory of false

8   imprisonment.  Watts v. Cnty. of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001) (citing to Asgari

9   v. City of L.A., 15 Cal. 4th 744, 753 n.3, as modified on denial of reh'g (Mar. 17, 1997)).  Similar

10  to a claim under § 1983, "California state law prohibits civil liability for false arrest where an

11  arresting officer had reasonable cause to believe the arrest was lawful."  Garcia v. Cnty. of Merced,

12  639 F.3d 1206, 1213 (9th Cir. 2011) (citing Cal. Penal Code § 847(b)(1); reversing denial of

13  summary judgment on state law false arrest claim where officer defendants had probable cause to

14  arrest plaintiff); see also Jaramillo v. City of San Mateo, 76 F. Supp. 3d 905, 927 (N.D. Cal. 2014)

15  ("Courts analyze state false arrest and false imprisonment claims under the same rubric as § 1983

16  claims based on false arrest under the Fourth Amendment.") (citations omitted).

17          The Court has already determined Plaintiff fails to state a § 1983 false arrest/imprisonment

18  claim because the complaint alleges facts showing probable cause existed for the detention and

19  arrest.  For these same reasons, the Court finds Plaintiff fails to assert a cognizable state law claim

20  for false imprisonment.

21          3.      Malicious Prosecution (Count VI)

22          "Malicious prosecution consists of initiating or procuring the arrest and prosecution of

23  another under lawful process, but from malicious motives and without probable cause . . .  The test

24  is whether the defendant was actively instrumental in causing the prosecution."  Sullivan v. Cnty.

25  of L.A., 12 Cal. 3d 710, 720 (1974).  In California, to establish a cause of action for malicious

26  prosecution, the plaintiff must allege sufficient facts showing that the prior judicial proceeding

27  commenced by or at the direction of the defendant, was: (1) pursued to a legal termination favorable

28  to the plaintiff; (2) brought without probable cause; and (3) initiated with malice.  Villa v. Cole, 4

25

Cal. App. 4th 1327, 1335 (1992); Sagonowsky v. More, 64 Cal. App. 4th 122, 128 (1998). However, "[u]nder California law, a police officer is granted statutory immunity from liability for malicious prosecution . . . ." Asgari, 15 Cal. 4th at 752 (citing Cal. Gov. Code § 821.64 ("A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.")).

The only individual defendants identified in the complaint are police officers. Plaintiff's claim against the individual officer defendants therefore fails because they are statutorily immune. Cal. Gov. Code § 821.64; Asgari, 15 Cal. 4th at 752. Furthermore, even on the merits, Plaintiff's claim fails at the first element because Plaintiff does not identify any prior judicial proceeding. Indeed, Plaintiff does not allege any criminal complaint was ever filed against him. Rather, the complaint shows Plaintiff was temporarily detained under suspicion of expired registration tags, and that he was released after signing his citation. Nor has Plaintiff alleged any facts to satisfy the remaining two elements. Accordingly, Plaintiff fails to assert a cognizable state law claim for malicious prosecution.

### 4. Intentional Infliction of Emotional Distress (Count VII)

To state a claim for intentional infliction of emotional distress ("IIED") under California law, a plaintiff must satisfactorily allege the following elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (citations and quotation marks omitted).

The California Supreme Court has explained that "outrageous" conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a civilized community," and that "the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." Id. at 1050–51 (liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") (citations and quotation marks omitted); see also Yurick v. Superior Ct., 209 Cal. App. 3d 1116, 1129 (1989) (holding objectively offensive

1   conduct that exceeds standards of decency still may not be outrageous for purposes of IIED claim).

2   The emotional distress caused by the conduct must be "of such substantial quality or enduring

3   quality that no reasonable [person] in civilized society should be expected to endure it." Lust v.

4   State Farm Mut. Auto. Ins. Co., No. 2:11-cv-02051-MCE-KJN, 2012 WL 592060, at *3 (E.D. Cal.

5   Feb. 22, 2012) (quoting Kelley v. Conco Cos., 196 Cal. App. 4th 191, 215–16 (2011)).  This means

6   the "distress must be [objectively] reasonable and justified under the circumstances."  Potter v.

7   Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1004 (1993).  Moreover, to state an IIED claim, a

8   plaintiff needs to allege facts that indicate the nature or extent of any mental distress suffered as a

9   result of the alleged outrageous conduct.  Hamilton v. Prudential Fin., No. 2:07-cv-00944-MCE-

10  DAD, 2007 WL 2827792, at *4 (E.D. Cal. Sept. 27, 2007).

11          Particularly within the context of an arrest, California courts have found that an IIED claim

12  requires a showing that either the arrest or the use of force was outrageous or wrongful.  Hughes,

13  46 Cal. 4th at 1050; see also Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) (negligent

14  infliction of emotional distress requires showing of wrongful conduct); Cal. Penal Code § 847(b)

15  (no civil liability against an officer may arise from an arrest if the arrest was lawful, or the officer

16  believed at the time of arrest that the arrest was lawful).

17          Here, Plaintiff alleges he was initially pulled over for a suspected traffic violation.  This

18  denotes a sufficient basis for the initial stop.  Moreover, Plaintiff alleges he was arrested after he

19  refused to provide his driver's license, Minnis-Swass confirmed with his supervisor that he should

20  arrest Plaintiff for refusing to produce his license, and Plaintiff was released after Minnis-Swass

21  found and reviewed the license.  This, too, indicates the detention and arrest were lawful.

22  Furthermore, even accepting Plaintiff's allegations as true, Plaintiff has not alleged outrageous

23  conduct by Minnis-Swass.  See, e.g., Smith v. Langford, No. 2:14-cv-1916 JAM GGH PS, 2015

24  WL 3403038, at *1, 9 (E.D. Cal. May 27, 2015) (dismissing IIED claim based on impoundment of

25  plaintiff's car after he was stopped at DUI checkpoint and found not to have valid driver's license);

26  Tarantino v. Syputo, No. C 03-03450 MHP, 2006 WL 1530030, at *13 (N.D. Cal. Jun. 2, 2006)

27  (granting summary judgment for defendants on IIED claim arising from towing of plaintiff's

28  unregistered vehicles from his property), aff'd, 270 Fed. App'x. 675, 677 (9th Cir. 2008).  Thus,

Plaintiff fails to state a claim for IIED on the basis that he was arrested without any reasonable justification.

Alternatively, Plaintiff alleges Minnis-Swass caused him severe emotional distress because he put Plaintiff in tight handcuffs that were not properly locked and continually got tighter, causing more and more pain and discomfort; that "Defendants" refused to loosen the handcuffs when Plaintiff requested that he do so; and that Plaintiff was required to endure physical pain for about an hour. (Compl. ¶¶ 61(b)–(d).) While these allegations may potentially satisfy the first and third element of an IIED claim, Plaintiff does not allege sufficient non-conclusory facts showing that he actually suffered extreme or severe emotional distress or damage. See, e.g., Hughes, 46 Cal. 4th at 1051 (finding claim that plaintiff suffered discomfort, worry, anxiety, upset stomach, concern, and agitation did not comprise severe emotional distress); Hamilton, 2007 WL 2827792, at *4 (plaintiff's conclusory statements that he suffered from depression, frustration, nervousness and anxiety after defendant's actions were insufficient to show the nature or extent of plaintiff's suffering to sufficiently state a claim for IIED); see also Austin, 367 F.3d at 1169–70, 1172 (upholding dismissal on summary judgment of IIED claim where officer exposed himself to inmate plaintiff, called him names and threatened to beat him up, then lied about the incident which resulted in plaintiff being placed in administrative segregation for six weeks, finding that plaintiff established outrageous conduct but failed to demonstrate any severe emotional distress or damage). Accordingly, Plaintiff fails to state a claim for IIED on this basis as well.

### 5.    Respondeat Superior (Count VIII)

While respondeat superior is an improper basis for imposing liability under § 1983, see Monell, 436 U.S. at 692–94, it remains a valid basis for a state law claim. See Perez v. Van Groningen & Sons, Inc., 41 Cal. 3d 962, 967–68 (1986). California Government Code § 815.2 provides:

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.
>
> (b) Except as otherwise provided by statute, a public entity is not

1

2

> liable for an injury resulting from an act or omission of an employee
> of the public entity where the employee is immune from liability.

3      Cal. Gov't Code § 815.2.  Therefore, to the extent Plaintiff sufficiently asserts a state law claim

4      against an individual Modesto police officer defendant, he may assert that claim against the City of

5      Modesto and Modesto Police Department under principles of respondeat superior.

6          Here, Plaintiff asserts state law claims for false imprisonment, malicious prosecution, and

7      IIED against the City of Modesto and Modesto Police Department under a theory of respondeat

8      superior.  However, because the Court has determined that Plaintiff fails to allege sufficient facts

9      to assert any cognizable state claims against the individual officer defendants, Plaintiff also fails to

10     allege these claims against Defendants City of Modesto and Modesto Police Department under

11     respondeat superior.

12         6.    Indemnification (Count IX)

13         Under California law, indemnity refers to the principle of shifting responsibility and costs

14     amongst tortfeasors relative to their culpability in causing harm to the plaintiff.  See, e.g., Myers

15     Bldg. Indus., Ltd. v. Interface Tech., Inc. (Myers), 13 Cal. App. 4th 949 (1993), as modified on

16     denial of reh'g (Mar. 26, 1993); Cal. Civ. Code, § 2772; Am. Motorcycle Assn. v. Superior Ct., 20

17     Cal. 3d 578 (1978).  While indemnity may be applied under equitable doctrines, it typically arises

18     pursuant to a contractual agreement between parties.  See Myers, 13 Cal. App. 4th at 968 ("[a]n

19     indemnitor in an indemnity contract generally undertakes to protect the indemnitee against loss or

20     damage through liability to a third person."); Wilshire-Doheny Assocs. Ltd. v. Shapiro, 83 Cal.

21     App. 4th 1380 (2000); Jaffe v. Huxley Architecture, 200 Cal. App. 3d 1188 (1988).  To recover

22     under an indemnification agreement, for example, the indemnitee must establish: (1) the parties'

23     contractual relationship; (2) the indemnitee's performance of that portion of the contract which

24     gives rise to the indemnification claim; (3) the facts showing a loss within the meaning of the

25     parties' indemnification agreement; and (4) the amount of damages sustained.  Clear Connection

26     Corp. v. Comcast Cable Commc'ns Mgmt., LLC, 501 F. Supp. 3d 886, 892 (E.D. Cal. 2020) (citing

27     Four Star Elec., Inc. v. F & H Constr., 7 Cal. App. 4th 1375, 1380 (1992)).

28         Here, Plaintiff attempts to assert a claim for indemnification, but provides no factual or legal

1    basis for the claim.  Plaintiff is neither the indemnitee nor the indemnitor, but the allegedly injured

2    third-party.  No contractual or other relationship exists between Plaintiff and any other defendant,

3    nor has Plaintiff alleged the existence of any other basis upon which to seek indemnification from

4    any named defendant in this action.  As such, Plaintiff fails to state a claim for indemnification.

5                                                     **IV.**

6                                  **CONCLUSION AND ORDER**

7            Plaintiff has failed to state any cognizable claim for a violation of his federal or state rights

8    in this action.  Nonetheless, the Court will grant Plaintiff one opportunity to amend the complaint

9    if he believes he can do so in good faith.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

10          If Plaintiff chooses to amend his complaint, the amended complaint should be brief, Fed.

11   R. Civ. P. 8(a), but it must also clearly and concisely set forth the claims Plaintiff wishes to pursue

12   and identify the actions taken by each Defendant that led to each alleged deprivation of Plaintiff's

13   constitutional rights.   Iqbal, 556 U.S. at 678–79.   Although accepted as true, the "[f]actual

14   allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly,

15   550 U.S. at 555 (citations omitted).  Further, Plaintiff may not change the nature of this suit by

16   adding new, unrelated claims in his first amended complaint.  George v. Smith, 507 F.3d 605, 607

17   (7th Cir. 2007) (no "buckshot" complaints).  Plaintiff should also not attempt to plead causes of

18   action which he acknowledges are barred by some type of immunity.

19          Plaintiff is advised that an amended complaint supersedes the original complaint.  Lacey v.

20   Maricopa Cnty., 693 F.3d 896, 927.  Absent Court approval, Plaintiff's first amended complaint

21   must be "complete in itself without reference to the prior or superseded pleading."  E.D. Cal. L.R.

22   220.

23          Finally, if Plaintiff chooses to file an amended complaint, he must use the time given to

24   amend to do everything he can to supply the names of the Doe officer defendants without further

25   assistance from the Court.  Further, Plaintiff must describe what each Doe officer did to violate his

26   rights.  For example, Plaintiff should allege specific acts that each Doe officer defendant did, such

27   as "Officer John Doe 1 did X" and "Officer John Doe 2 did Y."

28   ///

Accordingly, IT IS HEREBY ORDERED that:

1.      The Clerk of the Court shall send Plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order;

3.      The first amended complaint, including attachments, shall not exceed twenty-five (25) pages in length; and

4.      If Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend to a District Judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated:   **February 10, 2022**

UNITED STATES MAGISTRATE JUDGE

31