1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11    TONY VALENTINO GRISSOM,

Case No.  1:21-cv-01273-JLT-SAB

12           Plaintiff,

FINDINGS AND RECOMMENDATIONS
RECOMMENDING DISMISSING ACTION

13        v.

FOR FAILURE TO STATE A CLAIM AND
FAILURE TO PROSECUTE/OBEY A

14    MODESTO POLICE DEPARTMENT, et al.,

COURT ORDER

15           Defendants.

(ECF Nos. 1, 10)

16

**OBJECTIONS DUE WITHIN TWENTY-
ONE**

17

18

19

20                                    **I.**

21                            **BACKGROUND**

22        Plaintiff Tony Valentino Grissom, also known as Hawk Silverdragon ("Plaintiff"),[1]

23    proceeding *pro se* and *in forma pauperis*, initiated this action in the Sacramento Division of the

---

[1] The Court notes that, at various times throughout the complaint and attached documents, Plaintiff refers to himself

24

25    as both Hawk Silverdragon Trust© and Tony Valentino Grissom Exrel Hawk Silverdragon as "accommodation
party" of Hawk Silverdragon Trust©.  (See Compl. at 1; see also id. at ¶ 4 (Plaintiff refers to himself as beneficiary

26    of the Tony Valentino Grissom Exrel Hawk Silverdragon Trust©).)  It is at times unclear whether Plaintiff purports
to be asserting claims on behalf of the trust or himself.  However, as Local Rule 183(a) prohibits non-attorneys from

27    representing business entities and Plaintiff, who is proceeding in this matter *pro se*, has not indicated that he is a
practicing attorney and therefore may not represent the Hawk Silverdragon Trust©, the Court presumes for purposes

28    of the instant findings and recommendations that Plaintiff is asserting all claims on behalf of himself as Tony
Valentino Grissom aka Hawk Silverdragon.

1

1   Eastern District of California on August 13, 2021, against Defendants Modesto Police

2   Department, City of Modesto, Officer Tyrell Minnis-Swass, and two Doe Officers.  (ECF No. 1.)

3   On August 23, 2021, the case was transferred from the Sacramento Division to this Court.  (ECF

4   No. 3.)  The Court screened Plaintiff's complaint and determined that Plaintiff failed to state a

5   cognizable claim.  An order issued on February 11, 2022, providing Plaintiff with thirty days in

6   which to file an amended complaint. (ECF No. 10.)  In the February 11, 2022 order, Plaintiff was

7   advised that if he failed to file an amended complaint, it would be recommended that this action

8   be dismissed for the reasons stated in the order.  (Id. at 31.)  More than thirty days have passed,

9   and Plaintiff has not filed an amended complaint or otherwise responded to the November 19,

10  2021 order.  For the following reasons, the Court shall recommend the action be dismissed for

11  failure to state a claim and failure to prosecute/obey a Court order.

<div align="center">

**II.**

**DISCUSSION**

</div>

14        **A.**      **Failure to State a Claim**

15        1.      <u>Plaintiff's Allegations</u>

16        Plaintiff's original complaint attempts to assert causes of action for false arrest, due

17  process violations, a <u>Brady</u> violation, false imprisonment, conspiracy to commit constitutional

18  violations, failure to intervene, malicious prosecution, intentional infliction of emotional distress

19  (IIED), respondeat superior, and indemnification. (ECF No. 1.)

20        Plaintiff alleges he is "one of the people indigenous to this Land of the California

21  Republic." (Compl. ¶ 4.)  On August 22, 2020, around noon, Plaintiff was "traveling from point

22  (a) to point (b) in a private conveyance of his choice," also referred to by Plaintiff as "his

23  vehicle," in Modesto, California.  (Id. at ¶¶ 8, 11.)  As he was "on his way to park his vehicle,"

24  Plaintiff was stopped by Defendant Officer Minnis-Swass "for a suspected traffic violation,"

25  specifically, an expired vehicle registration.  (Id. at ¶¶ 8, 28; see also Ex. D, ECF No. 1 at 25–26

26  (traffic citation for violation of Cal. Veh. Code § 4000(A)(1)).)  When asked to show his driver's

27  license, Plaintiff told Minnis-Swass he was not "driving" because he was "not actively engaged in

28  commerce." (Compl. ¶¶ 9, 11.)  Minnis-Swass disagreed with this characterization and informed

<div align="center">

2

</div>

1    Plaintiff he needed to see Plaintiff's driver's license, or he would have to arrest Plaintiff.  (See id.

2    at ¶ 12.)    Instead of presenting a driver's license, Plaintiff handed Minnis-Swass a "Fee

3    Schedule,"[2] a "Notice to Arresting Officer,"[3] and a "Sovereign Identification."[4]  (Id. at ¶ 13; id. at

4    Exs. A–C, ECF No. 1 at 15–24.)    At this time, Minnis-Swass called his "superior officer" to

5    verify whether he should arrest Plaintiff for failure to show a driver's license.  (Compl. ¶ 14.)

6          Thereafter, two Doe officers arrived on scene.  (Id. at ¶ 15.)  Plaintiff concludes the Doe

7    officers "formed a verbal agreement" with Minnis-Swass to arrest Plaintiff for failure to produce

8    a driver's license but alleges no other facts about the Doe officers.  Minnis-Swass then arrested

9    Plaintiff by removing him from his vehicle and placing him in handcuff restraints.  (Id. at ¶ 16.)

10   Minnis-Swass searched Plaintiff's clothes and removed a wallet and a computer thumb drive from

11   Plaintiff's pockets.  (Id. at ¶ 17.)  Minnis-Swass put Plaintiff in the back of his police vehicle,

12   then he looked through Plaintiff's wallet and found Plaintiff's driver's license.  (Id. at ¶ 18.)

13   Minnis-Swass issued Plaintiff a citation and told Plaintiff he would be released if he signed the

14   citation.  (Id. at ¶ 19; see also id. at 26.)  Plaintiff claims he signed the citation "under duress,

15   coercion and threat of slavery."  (Id. at ¶ 20.)  After Plaintiff signed the citation, unspecified

16   _____

17   [2] Plaintiff appends a copy of the "Notice of Fee Schedule for Protection From Corporate Abuse, False Arrest, Victimless Charges, and Bills of Attainder" he provided to Minnis-Swass as Exhibit A to the complaint.  (Ex. A, ECF No. 1 at 15–18.)  The notice declares Plaintiff is "a people as recognized in America's founding documents, including the Magna Carta, The Articles of Confederation, the Declaration of Independence, and the original Constitution for the united states of America," and asserts Plaintiff's sovereignty in America apart from the State of California, which Plaintiff declares to be a "corporation," and all state employees its "employees and franchises . . . [who] lack understanding of Corpus Delecti."  At bottom, the notice declares Plaintiff may not be punished for violating any California regulation or statute that he deems to be undeserving of punishment and sets forth a "fee schedule" by which Plaintiff purports to charge arresting police officers a fee of some to-be-determined weight "in troy ounces of .999 pure gold" per violation of Plaintiff's "unalienable rights" and/or per hour that Plaintiff is detained or under arrest.

18
19
20
21
22

23   [3] Plaintiff appends a copy of the "Notice to Arresting Officer with Miranda Warning" he provided to Minnis-Swass as Exhibit B to the complaint.  (Ex. B, ECF No. 1 at 19–21.)  The notice purports to notify any arresting officer that Plaintiff is "working in the capacity of a Civil Rights Investigator," warns that any action taken by the officer may result in a civil rights lawsuit being brought against him, and sets forth a list of "demands" that must be satisfied by the arresting officer in connection with any arrest in order to avoid being sued by Plaintiff in civil court.

24

25   [4] The document referred to as Plaintiff's "Sovereign Identification" and appended to the complaint as Exhibit C is titled "Claim for the Live Life."  (Ex. C, ECF No. 1 at 22–24.)  It lists Plaintiff's birthdate and birth parents' names, includes illegible signatures and extremely grainy and poor-quality copies of photos that the Court surmises are meant to be of Plaintiff's headshot, left and right retina, fingerprint, and "DNA," and identifies Plaintiff by his chosen name, Hawk Silverdragon.  While the Court declines to ascertain whether the document constitutes a form of identification considered valid by some organization or sovereign nation, it is clear that the document was not issued by the State of California, Department of Motor Vehicles.

26
27
28

3

1    Defendants released Plaintiff, returned Plaintiff's wallet but not the thumb drive to him, took

2    pictures of Plaintiff's "Fee Schedule," "Notice to Arresting Officer," and "Sovereign

3    Identification," and departed from the scene.  (Id. at ¶¶ 22, 23.)  Plaintiff alleges that, during the

4    entire incident, he was never read his Miranda rights or criminally charged.  (Id. at ¶¶ 24, 34.)

5          As a result, Plaintiff claims he suffered pain and emotional distress.  (Id. at ¶¶ 31, 38, 44,

6    48, 51, 59.)

7          2.     Analysis

8          As noted, the complaint purports to assert causes of action for 42 U.S.C. § 1983: false

9    arrest (Count 1); 42 U.S.C. § 1983: due process/Brady violation (Count 2); state law claim: false

10   imprisonment (Count 3); 42 U.S.C. § 1983: conspiracy to commit constitutional violations (Count

11   4); 42 U.S.C. § 1983: failure to intervene (Count 5); and additional state law claims of malicious

12   prosecution (Count 6); IIED (Count 7); respondeat superior (Count 8); and indemnification

13   (Count 9).  For the reasons that follow, Plaintiff fails to state a claim for these asserted causes of

14   action.

15         **a.     Claims Against Doe Defendants**

16         Plaintiff asserts no factual allegations pertaining to either John Doe 1 or John Doe 2 of the

17   Doe officer defendants, nor does he identify which Doe officer defendant committed what alleged

18   act.  This is insufficient to put prospective defendants on notice of their alleged actions or

19   omissions that Plaintiff claims violate his federal rights.  As such, Plaintiff fails to state any

20   federal or state claim against either of the Doe officer defendants.

21         **b.     Federal Claims**

22         Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or

23   other federal rights by persons acting under color of state law.  42 U.S.C. § 1983; Long v. Cnty.

24   of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

25   2002).  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a

26   method for vindicating federal rights elsewhere conferred.' "  Graham v. Connor, 490 U.S. 386,

27   393–94 (1989) (citation omitted).  To state a claim under § 1983, a plaintiff is required to show

28   that (1) each defendant acted under color of state law and (2) each defendant deprived him of

4

1    rights secured by the Constitution or federal law.    Benavidez v. Cnty. of San Diego, 993 F.3d

2    1134, 1144 (9th Cir. 2021) (citing Long, 442 F.3d at 1185; West v. Atkins, 487 U.S. 42, 48

3    (1988)).  This requires the plaintiff to demonstrate that each defendant personally participated in

4    the deprivation of his rights. Jones, 297 F.3d at 934; see also Ewing v. City of Stockton, 588 F.3d

5    1218, 1235 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183

6    (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)) (a deprivation

7    occurs if the defendant "does an affirmative act, participates in another's affirmative act, or omits

8    to perform an act which he is legally required to do").  In other words, to state a claim for relief

9    under § 1983, Plaintiff must link each named defendant with some affirmative act or omission

10   that demonstrates a violation of his federal rights.

11       An officer may be liable for the conduct of others where he or she has been an "integral

12   participant" in the alleged constitutional violation. Blankenhorn v. City of Orange, 485 F.3d 463,

13   481 n.12 (9th Cir. 2007).  " '[I]ntegral participation' does not require that each officer's actions

14   themselves rise to the level of a constitutional violation," Boyd v. Benton Cnty., 374 F.3d 773,

15   780 (9th Cir. 2004), "[b]ut it does require some fundamental involvement in the conduct that

16   allegedly caused the violation," Blankenhorn, 485 F.3d at 481 n.12.  An officer who provides

17   armed backup or who participated in a police action with knowledge that a particular form of

18   force would be used but without objecting may be liable under the doctrine of integral

19   participation. Boyd, 374 F.3d at 780 (citing James ex rel. James v. Sadler, 909 F.2d 834, 837 (5th

20   Cir. 1990) and Melear v. Spears, 862 F.2d 1177, 1186 (5th Cir. 1989)).

21              i.       Claims Against the Modesto Police Department

22       Local governmental units, such as counties and cities, are considered "persons" within the

23   meaning of § 1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 70 (1989); Cnty. of Los

24   Angeles v. Superior Ct., 68 Cal. App. 4th 1166, 1171 (1998).  Local government sub-units,

25   however, are not. See Sanders v. Aranas, No. 1:06-CV-1574 AWI SMS, 2008 WL 268972, at *3

26   (E.D. Cal. Jan. 29, 2008) (Fresno Police Department cannot be sued under § 1983 because it is a

27   sub-division of the City of Fresno); Garcia v. City of Merced, 637 F. Supp. 2d 731, 760 (E.D.

28   Cal. 2008) (dismissing City of Merced Police Department as improper defendant under § 1983);

1    Nelson v. Cnty. of Sacramento, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013); Dean v. Barber,

2    951 F.2d 1210, 1214 (11th Cir. 1992) (affirming district court's dismissal of claims against a

3    county sheriff's department).

4         As a subdivision of the City of Modesto, the Modesto Police Department is not a proper

5    defendant on Plaintiff's § 1983 claims.  Accordingly, Plaintiff fails to state any federal claim

6    against Defendant Modesto Police Department.

7              ii.        Federal Claims Against the City of Modesto (Municipal Liability Under § 1983)

8         While local governmental units are considered "persons" within the meaning of § 1983, a

9    local government unit may not be held responsible for the acts of its employees or officials under

10   a respondeat superior theory of liability.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91

11   (1978); see also Bd. of Cnty. Comm'rs v. Brown (Brown), 520 U.S. 397, 403 (1997).  Thus,

12   municipal liability must rest on the actions of the municipality, and not of the actions of its

13   employees or officers.  See Brown at 403.

14        A Monell claim may be stated under three theories of municipal liability: (1) when official

15   policies or established customs inflict a constitutional injury; (2) when omissions or failures to act

16   amount to a local government policy of deliberate indifference to constitutional rights; or (3)

17   when a local government official with final policy-making authority ratifies a subordinate's

18   unconstitutional conduct.  Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1249–50 (9th Cir.

19   2010).

20        A plaintiff may establish municipal liability based on an official policy or custom by

21   demonstrating "the constitutional tort was the result of a 'longstanding practice or custom which

22   constitutes the standard operating procedure of the local government entity.' "  Price v. Sery, 513

23   F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & Cnty. of S.F., 308 F.3d 968, 984–85 (9th

24   Cir. 2002)).  To establish liability for governmental entities under this theory, a plaintiff must

25   show (1) that the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2)

26   that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the

27   plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional

28   violation."  Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)

1    (internal quotation marks omitted).

2         A municipality's failure to train its police officers may also amount to a policy of

3    deliberate indifference.  See Price, 513 F.3d at 973.  To state a claim for failure to train, a plaintiff

4    must show (1) "the existing training program" is inadequate "in relation to the tasks the particular

5    officers must perform"; (2) the officials have been deliberately indifferent "to the rights of

6    persons with whom the police come into contact"; and (3) the inadequacy of the training "actually

7    caused the deprivation of the alleged constitutional right."  Merritt v. Cnty. of L.A., 875 F.2d 765,

8    770 (9th Cir. 1989) (internal citations and quotation marks omitted).

9         Finally, a plaintiff may claim Monell liability where an "official with final policy-making

10   authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it."

11   Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992).  A policymaker's "knowledge of an

12   unconstitutional act does not, by itself, constitute ratification."  Christie v. Iopa, 176 F.3d 1231,

13   1239 (9th Cir. 1999). "[A] policymaker's mere refusal to overrule a subordinate's completed act

14   does not constitute approval."  Id.  Rather, ratification requires the authorized policymaker to

15   make a "conscious, affirmative choice."  Gillette, 979 F.2d at 1347.  Ratification "and thus the

16   existence of a *de facto* policy or custom, can be shown by a municipality's post-event conduct,

17   including its conduct in an investigation of the incident."  Dorger v. City of Napa, No. 12-cv-440

18   YGR, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (citing Henry v. Cnty. of Shasta, 132

19   F.3d 512, 518 (9th Cir. 1997)).  See Christie, 176 F.3d at 1240 (finding failure to discipline along

20   with after-the-fact conduct indicating policymaker agreed with subordinate's conduct sufficient to

21   show ratification).

22        To plead a Monell claim with sufficient particularity under the requirements set forth by

23   Iqbal and Twombly, allegations in a complaint "may not simply recite the elements of a cause of

24   action, but must contain sufficient allegations of underlying facts to give fair notice and to enable

25   the opposing party to defend itself effectively."  AE ex rel. Hernandez v. Cnty. of Tulare, 666

26   F.3d 631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)) (citing

27   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

28   (2007)).

1    Here, Plaintiff does not identify any official policy or custom, nor does he allege any facts

2    showing that he was arrested pursuant to an official policy or custom.  Nor does Plaintiff allege

3    any facts showing that he was arrested due to any lack of training on the part of Minnis-Swass.

4    Finally, Plaintiff alleges Minnis-Swass contacted his superior officer prior to arresting Plaintiff to

5    confirm that he should arrest Plaintiff for failure to produce a driver's license, but Plaintiff does

6    not allege any facts showing that Minnis-Swass's supervisor was an "official with final policy-

7    making authority" capable of ratifying the arrest, or other facts showing that any "ratification"

8    occurred.  Gillette, 979 F.2d at 1346–47.  Accordingly, Plaintiff fails to state any federal claim for

9    municipal liability under § 1983 against Defendant City of Modesto.

10            iii.      42 U.S.C. § 1983: False Arrest (Count I)

11    Plaintiff claims he was unlawfully detained and falsely arrested without legal justification

12    or probable cause, in violation of his First, Fourth, and Fifth Amendment rights.  (Compl. ¶¶ 27–

13    32.)  As discussed herein, unlawful detainments and arrests fall under the Fourth, not First or

14    Fifth Amendments; therefore, Plaintiff fails to state a claim for false detainment/arrest under the

15    First or Fifth Amendments.

16    As to Plaintiff's claim under the Fourth Amendment, the complaint is devoid of factual

17    allegations regarding why the detention or arrest was unlawful.  Further, the complaint reveals

18    that Minnis Swass had reasonable suspicion and probable cause to detain and arrest Plaintiff.

19        **a)      Detention**

20    "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the

21    Government, and its protections extend to brief investigatory stops of persons or vehicles that fall

22    short of traditional arrest."  U.S. v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392

23    U.S. 1, 9 (1968)).  Peace officers may conduct a brief, investigatory search or seizure, so long as

24    they have a reasonable, articulable suspicion that "criminal activity may be afoot."  Terry, 392

25    U.S. at 30.  "Reasonable suspicion exists if specific, articulable facts . . . together with objective

26    and reasonable inferences suggest that the persons detained by the police are engaged in criminal

27    activity."  U.S. v. Hartz, 458 F.3d 1011, 1017 (9th Cir. 2006) (internal quotation marks omitted)

28    (alteration in original).  In determining whether an officer had reasonable suspicion to conduct a

8

1  stop of a vehicle, the Court must consider the totality of the circumstances involved in the stop.

2  Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1496 (9th Cir. 1996).  The reasonable

3  suspicion standard requires "considerably less than proof of wrongdoing by a preponderance of

4  the evidence, and obviously less than is necessary for probable cause."  Navarette v. California,

5  572 U.S. 393, 397 (2014) (citation and internal quotation marks omitted).

6         California Vehicle Code § 4000 states a person may not drive any motor vehicle unless it

7  is registered and the appropriate fees have been paid.  Cal. Veh. Code § 4000(a)(1).  Stopping an

8  automobile and detaining a driver to check his driver's license and vehicle registration are not

9  unreasonable under the Fourth Amendment when there is "articulable and reasonable suspicion

10  that a motorist is unlicensed or that an automobile is not registered."  Delaware v. Prouse, 440

11  U.S. 648, 663 (1979); see Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) (investigatory stop

12  was constitutional when automobile had "expired license tags in violation of Pennsylvania Motor

13  Code"); see also Pickett v. Nguyen, No. 15-cv-04421-WHO, 2016 WL 7406438, at *3–4 (N.D.

14  Cal. Dec. 22, 2016) ("an expired vehicle registration justifies a traffic stop under the Fourth

15  Amendment" and, moreover, "an arrest for any criminal offense, however minor, is sufficient

16  under the Fourth Amendment.").

17         According to the complaint, Plaintiff's vehicle registration was expired.  (See Compl. ¶

18  28.)  Plaintiff acknowledges that he was pulled over "for a suspected traffic violation" (id. at ¶ 8),

19  the citation attached as an exhibit to the complaint shows Plaintiff's registration tags expired

20  nearly six months prior to the date of the incident (Ex. D, ECF No. 1 at 25–26), and Plaintiff does

21  not attempt to dispute that his registration tags were expired.  Minnis-Swass's detention of

22  Plaintiff was thus supported by reasonable suspicion.  Therefore, Plaintiff fails to state a claim for

23  unlawful detention based on his traffic stop.

24        **b)**    **Arrest**

25         The Fourth Amendment prohibits arrests without probable cause or other justification.

26  Dubner v. City & Cnty. of S.F., 266 F.3d 959, 964 (9th Cir. 2001).  An arrest is supported by

27  probable cause if, under the totality of the circumstances, a prudent person would have concluded

28  that there was a fair probability the suspect had committed a crime.  Beck v. Ohio, 379 U.S. 89,

1    91 (1964); <u>Luchtel v. Hagemann</u>, 623 F.3d 975, 979 (9th Cir. 2010); <u>Gillan v. City of San</u>

2    <u>Marino</u>, 147 Cal. App. 4th 1033, 1044 (2007) ("Probable cause exists when the facts known to

3    the arresting officer would persuade someone of 'reasonable caution' that the person to be

4    arrested has committed a crime.").  Thus, to state a cognizable claim for false arrest, Plaintiff

5    must allege facts showing that no probable cause existed to arrest him.  <u>See</u> <u>Cabrera v. City of</u>

6    <u>Huntington Park</u>, 159 F.3d 374, 380 (9th Cir. 1998).

7        As previously noted, the complaint and exhibits attached to the complaint allege Plaintiff

8    was pulled over for expired vehicle tags and arrested after refusing to present, upon multiple

9    requests, his driver's license to Minnis-Swass.  To the extent Plaintiff was arrested for expired

10   registration tags, the Ninth Circuit has held that, even when an arrest for a code violation was not

11   authorized under California law, the arrest nonetheless did not violate the Fourth Amendment and

12   could not sustain a § 1983 claim.  <u>Edgerly v. City & Cnty. of S.F.</u>, 599 F.3d 946, 955–56 (9th Cir.

13   2010) (finding probable cause existed to believe the plaintiff was violating Cal. Pen. Code §

14   602.8 (for trespass, an infraction) and affirming judgment as a matter of law on plaintiff's § 1983

15   Fourth Amendment arrest claim); <u>Virginia v. Moore</u>, 553 U.S. 164, 171 (2008) (officers did not

16   violate Fourth Amendment by arresting motorist whom they believed was driving with a

17   suspended license, although under state law officers should have issued a summons rather than

18   make an arrest); <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001) (Fourth Amendment

19   does not forbid warrantless arrest for "even a very minor criminal offense" committed in arresting

20   officer's presence, such as seatbelt violation; custodial arrest and one-hour jail detention for

21   offense of driving without a seatbelt held constitutional); <u>People v. McKay</u>, 27 Cal. 4th 601, 607

22   (2002) (citing <u>U.S. v. McFadden</u>, 238 F.3d 198, 204 (2d Cir. 2001)) ("[T]here is nothing

23   inherently unconstitutional about effecting a custodial arrest for a fine-only offense.").

24       Additionally, probable cause to arrest existed based on Plaintiff's refusal to comply with

25   Minnis-Swass's orders to produce a driver's license.  It is well established that, if a <u>Terry</u> stop is

26   "justified at its inception," it is reasonable for an officer to ask "questions concerning a suspect's

27   identity" and that "the suspect can be arrested [under state law] and prosecuted for refusal to

28   answer."  <u>Hiibel v. Sixth Judicial Dist. Ct.of Nevada, Humboldt Cnty.</u>, 542 U.S. 177, 185–86

1    (2004).   State laws authorizing such arrests, which "properly balance[ ] the intrusion on the

2    individual's interests against the promotion of legitimate government interests," are constitutional

3    and do not offend the Fourth Amendment.  Id. at 178, 188.  California Penal Code § 853.5, for

4    example, states in relation to an "arrest[ ] for an infraction," officers may "require the arrestee to

5    present his or her driver's license or other satisfactory evidence of his or her identity for

6    examination and to sign a written promise to appear contained in a notice to appear . . . .  Only if

7    the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to

8    provide a thumbprint or fingerprint may the arrestee be taken into custody."  This law, intended to

9    limit "the authority to execute custodial arrests for offenses so minor that they are designated as

10    infractions" (U.S. v. Mota, 982 F.2d 1384, 1388 (9th Cir. 1993)), permits officers to arrest a non-

11    compliant suspect without a warrant "[i]f an officer has probable cause to believe that an

12    individual has committed even a very minor criminal offense in his presence."  Atwater, 532 U.S.

13    at 354; see also Salvatto v. Cnty. of Solano, 2007 WL 926788, at *6 (E.D. Cal. Mar. 27, 2007)

14    ("[F]ailure to produce satisfactory identification allows an officer to make an arrest without

15    violating the Fourth Amendment.") (citations omitted); see also Cal. Penal Code § 148(a)(1);

16    (permits fine and imprisonment of a person who "willfully resists, delays, or obstructs" a police

17    officer "in the discharge or attempt to discharge any duty of his or her office or employment");

18    Davis v. Cnty. of San Bernardino, No. EDCV 08-1262 SVW (SSx), 2009 WL 3838287, at *6

19    (C.D. Cal. Nov. 13, 2009), aff'd, 442 F. App'x 300 (9th Cir. 2011) ("refusal to comply with

20    police orders falls within the scope of the statute if it impedes the officer in the conduct of his

21    duties.") (emphasis omitted).

22         To determine whether the conversion of a detention to an arrest is justified, the Court must

23    "examine the events leading up to the arrest, and then decide 'whether these historical facts,

24    viewed from the standpoint of an objectively reasonable police officer, amount to' probable

25    cause."  Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal citation omitted).  Here, prior to

26    his arrest, Plaintiff alleges Minnis-Swass asked him at least twice to produce his driver's license

27    and Plaintiff refused to do so, first by arguing that he had not been "driving," and second by

28    producing his "fee schedule," "Notice to Arresting Officer," and "sovereign identity" instead of

1   his California driver's license.  (See compl. ¶¶ 9–14.)  Defendants, therefore, did not have enough

2   information to issue a citation.  Minnis-Swass also warned Plaintiff that "he [needed] to see

3   Plaintiff's driver's license or else he would have to arrest him."  (Id. at ¶ 12.)

4          Under the totality of these circumstances, Defendants had sufficient probable cause to

5   believe Plaintiff had violated California Vehicle Code § 4000 by driving without valid

6   registration tags, as well as cause to arrest Plaintiff given his additional refusal to provide

7   identification. See Dubner, 266 F.3d at 966 ("Probable cause exists when, under the totality of the

8   circumstances known to the arresting officers . . . a prudent person would believe the suspect had

9   committed a crime.").  The arrest of Plaintiff after he refused to produce his California driver's

10  license was therefore reasonable.

11         Thus, viewing the allegations as true and construing all inferences in the light most

12  favorable to Plaintiff, Plaintiff has not alleged facts showing he was arrested without probable

13  cause or that the detention or arrest were unreasonable.  Accordingly, Plaintiff fails to state a §

14  1983 claim for false arrest.

15         iv.     42 U.S.C.§ 1983: Due Process (Count II)

16         "The Fourteenth Amendment's Due Process Clause protects persons against deprivations

17  of life, liberty, or property; and those who seek to invoke its procedural protection must establish

18  that one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  The due

19  process clause of the Fourteenth Amendment protects two distinct but related rights: procedural

20  due process and substantive due process.  Albright v. Oliver, 510 U.S. 266, 272 (1994).

21         To state a procedural due process claim, Plaintiff must establish three elements: (1) a

22  liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the

23  government; and (3) lack of process."  Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th

24  Cir. 1993).

25         To state a substantive due process claim, a plaintiff must plead both a deprivation of his

26  liberty and conscience shocking behavior by the government.  Brittain v. Hansen, 451 F.3d 982,

27  991 (9th Cir. 2006).  More specifically, a plaintiff "must plead that the government's action was

28  'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety,

12

1   morals, or general welfare.' " Lebbos v. Judges of Superior Ct., 883 F.2d 810, 818 (9th Cir.

2   1989) (quoted source omitted).  To meet the "arbitrary and unreasonable" element, a plaintiff may

3   plead either: (1) an official acting with deliberate indifference to the risk of harm; or (2) a more

4   demanding showing that the official acted with the purpose to harm the plaintiff for reasons

5   unrelated to legitimate law enforcement objectives.  Porter v. Osborn, 546 F.3d 1131, 1137 (9th

6   Cir. 2008); Tatum v. Moody, 768 F.3d 806, 820 (9th Cir. 2014).  Which test to apply depends on

7   whether the circumstances are such that "actual deliberation is practical."  Porter, 546 F.3d at

8   1137.   In the circumstances here, where the police officers have the opportunity for actual

9   deliberation, id. at 1138, the deliberate indifference standard would apply.  Lemire v. Cal. Dept.

10  of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013).

11          Furthermore, the Supreme Court has held that if a constitutional claim is covered by a

12  specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed

13  under the standard appropriate to that specific provision, not under the rubric of substantive due

14  process."  U.S. v. Lanier, 520 U.S. 259, 272, n.7 (1997) (citing Graham, 490 U.S. at 394); see

15  also Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842–43 (1998) (citing Graham, 490 U.S. at 395

16  ("*All* claims that law enforcement officers have used excessive force — deadly or not — in the

17  course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

18  under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive

19  due process' approach.") (emphases in original)); Hazlett v. Dean, No. CIV 2:12-01782 WBS

20  DAD, 2013 WL 1749924, at *2 (E.D. Cal. Apr. 23, 2013) (dismissing "generalized substantive

21  due process claims under the Fourteenth Amendment" where the First and Fourth Amendments

22  were "explicit textual sources of constitutional protection in this action"); see also Tomelloso v.

23  City of Vacaville, No. 2:21-cv-00507-MCE-JDP, 2021 WL 5883039, at *2 (E.D. Cal. Dec. 13,

24  2021) (holding detention of only 45–90 minutes was too brief to trigger due process concerns as

25  opposed to the search and seizure protections guaranteed by the Fourth Amendment, but

26  acknowledging a "Fourteenth Amendment due process claim may exist if, after the lapse of a

27  certain amount of time, officials fail to release a detainee who they knew, or should have known,

28  was so entitled.") (citing Lee, 250 F.3d at 668).

13

1    Plaintiff claims Defendants deprived him of due process in violation of the Fourth and

2    Fifth Amendments when they (1) "failed to serve a bonded claim or charging instrument (warrant

3    for arrest of plaintiff)," (2) "failed to produce a corpus delecti or any witness to a public threat to

4    constitute any criminal activity of the plaintiff," (3) failed to give Miranda warnings, (4) searched

5    and seized Plaintiff's property without probable cause, (5) prevented Plaintiff from moving about

6    freely by placing handcuffs on him, and (6) forced Plaintiff to sign his citation "under duress,

7    coercion and threat of slavery."  (Compl. ¶¶ 34–35.)

8        As demonstrated by the aforementioned authorities, a due process claim is not properly

9    brought under the Fourth or Fifth Amendments but by the Fourteenth Amendment.  Furthermore,

10   Plaintiff's due process claim fails because its allegations are all conclusory.  Iqbal, 556 U.S. at

11   681.  First and foremost, Plaintiff does not indicate whether he is asserting a procedural due

12   process or substantive due process claim.  Further, it is entirely unclear from the pleading which

13   liberty interest/s Plaintiff was allegedly deprived of, which Defendant's actions caused the

14   deprivation, or what procedural protections (if any) he was denied with respect to each alleged

15   deprivation.  Accordingly, Plaintiff fails to state a cognizable claim for due process violations

16   under the Fourth and Fifth Amendment (Count II).

17       v.    Brady Violation (Count II)

18       Concurrent with his due process claim in Count II, Plaintiff also attempts to assert a §

19   1983 claim for a Brady violation.  (See Compl. 6.)  This claim is not supported in the law.

20       A Brady violation, derived from the Supreme Court case Brady v. Maryland, 373 U.S. 83

21   (1963), refers to the suppression of "material evidence helpful to the accused, whether at trial or

22   on a motion to suppress," and imposes an obligation on the government to provide favorable

23   material evidence to the defendant in a criminal setting.  See U.S. v. Barton, 995 F.2d 931, 934–

24   35 (9th Cir. 1993); U.S. v. Gamez-Orduno, 235 F.3d 453, 461 (9th Cir. 2000).  "To establish a

25   Brady violation, a defendant must show that: (1) the evidence at issue is favorable to the accused,

26   either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by

27   the government, regardless of whether the suppression was willful or inadvertent; and (3) the

28   evidence is material to the guilt or innocence of the defendant."  U.S. v. Sedaghaty, 728 F.3d 885,

14

1    899 (9th Cir. 2013) (citing <u>Brady</u>, 373 U.S. at 87).

2        <u>Brady</u> is inapplicable to the instant case, where (1) the instant matter is a civil, not

3    criminal, action (2) Plaintiff has not been criminally charged, and (3) no criminal case exists so

4    there is no exculpatory or impeaching evidence and no suppression issue.  Accordingly, the Court

5    finds Plaintiff fails to state a claim for a <u>Brady</u> violation.

6        vi.    42 U.S.C.§ 1983: Conspiracy to Commit Constitutional Violations (Count IV)

7        In order to allege a conspiracy under § 1983, a plaintiff must show "an agreement or

8    meeting of the minds to violate constitutional rights."  <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th

9    Cir. 2002) (internal quotation marks and citation omitted).  "To be liable, each participant in the

10   conspiracy need not know the exact details of the plan, but each participant must at least share the

11   common objective of the conspiracy."  <u>Id.</u> at 441.  This agreement or meeting of the minds may

12   be inferred based on circumstantial evidence, such as the actions of the defendants.  <u>Mendocino</u>

13   <u>Envtl. Ctr. v. Mendocino Cnty.</u>, 192 F.3d 1283, 1301 (9th Cir. 1999).  In addition, a conspiracy to

14   violate constitutional rights must be predicated on a viable underlying constitutional claim.  <u>See</u>

15   <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1168 (9th Cir. 2005).  The claim requires "an

16   actual deprivation of constitutional rights."  <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006).

17   "The defendants must have, by some concerted action, intended to accomplish some unlawful

18   objective for the purpose of harming another which results in damage."  <u>Mendocino Envtl. Ctr.</u>,

19   192 F.3d at 1301.

20       Plaintiff claims Minnis-Swass and the two Doe officer defendants conspired to violate

21   Plaintiff's constitutional rights by "forming a verbal agreement" to arrest Plaintiff for failing to

22   produce his driver's license and agreeing to not report each other's conduct, including the use of

23   force, and agreeing to hide or destroy any evidence of wrongdoing.  (<u>See</u> Compl. ¶¶ 15, 47.)  This

24   statement is wholly conclusory and unsupported by any factual allegations.  The Court therefore

25   finds this allegation is insufficient to state a claim for § 1983 conspiracy.

26       Further, Plaintiff has not alleged sufficient facts to establish an underlying constitutional

27   violation.  <u>See Dixon v. City of Lawton</u>, 898 F.2d 1443, 1447–49 (10th Cir. 1990) ("[T]o recover

28   under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also

15

1    an actual deprivation of rights; pleading and proof of one without the other will be insufficient.")

2    (citing Dooley v. Reiss, 736 F.2d 1392, 1395 (9th Cir. 1984).  Here, Plaintiff has alleged facts

3    establishing probable cause for the detention and arrest; therefore, even if the officers agreed to

4    arrest Plaintiff no unlawful objective has been identified.  Second, the complaint is devoid of any

5    factual allegations regarding the Doe officers other than that they arrived on scene at the time of

6    the incident.  Thus, no "concerted action" has been alleged.  For these reasons as well, Plaintiff

7    fails to state a claim for § 1983 civil conspiracy.

8              vii.    42 U.S.C. § 1983: Failure to Intervene (Count V)

9         "[P]olice officers have a duty to [intervene] when their fellow officers violate the

10   constitutional rights of a suspect or other citizen."  Cunningham v. Gates, 229 F.3d 1271, 1289

11   (9th Cir. 2000), as amended (Oct. 31, 2000).  However, an officer can only be held liable for

12   failing to intervene if the officer had a "realistic opportunity" to do so.  Id. at 1290; Garlick v.

13   County of Kern, 167 F. Supp. 3d 1117, 1161 (E.D. Cal. 2016).  Thus, officers who are not present

14   at the time of a constitutional violation have no realistic opportunity to intervene.  Cunningham,

15   228 F.3d at 1290.  Moreover, a police officer who is "merely a bystander" to another officer's

16   conduct is insufficient to establish liability under section 1983.  Hopkins v. Bonvicino, 573 F.3d

17   752, 770 (9th Cir. 2009) (quoting Chuman v. Wright, 76 F.3d 292 (9th Cir. 1996)).  Or, "if a

18   constitutional violation occurs too quickly, there may no realistic opportunity to intercede to

19   prevent the violation."  Freeland v. Sacramento City Police Dep't, No. CIV S-06-0187 LKK

20   DAD P, 2010 WL 408908, at *5 (E.D. Cal. Jan. 29, 2010) (citing Knapps v. City of Oakland, 647

21   F. Supp. 2d 1129, 1159–60 (N.D. Cal. 2009)).  Thus, "[t]o state a claim for failure to intervene,

22   Plaintiff must allege circumstances showing that [the officer defendant/s] had an opportunity to

23   intervene and prevent or curtail the violation (e.g., enough time to observe what was happening

24   and intervene to stop it), but failed to do so."  Gonzales v. Cate, No. 1:06-cv-1420-AWI-MJS

25   (PC), 2011 WL 1332174, at *3 (E.D. Cal. Apr. 5, 2011); Claiborne v. Blauser, No. 2:10-cv-2427

26   LKK EFB P, 2013 WL 1384995, at *5 (E.D. Cal. Apr. 4, 2013).

27        Here, the complaint lacks factual allegations that any of the individual officers were on

28   notice that Plaintiff's constitutional rights had been or were being violated.  Plaintiff does not

1   identify which officer Defendant/s allegedly failed to intervene, nor does he identify what alleged

2   violation of his rights the officer/s should have prevented or curtailed.  See Claiborne, 2013 WL

3   1384995, at *5 ("A defendant is liable for failing to intervene only where there has been an

4   underlying constitutional violation warranting intervention").  Therefore, there are no factual

5   allegations showing that any Defendants could have intervened.  Accordingly, Plaintiff does not

6   allege sufficient facts to support a cognizable claim for failure to intervene.

7              **c.      State Law Claims – Government Claims Act**

8          The California Government Claims Act requires that a tort claim against a public entity or

9   its employees be presented to the California Victim Compensation and Government Claims

10   Board no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910,

11   911.2, 945.4, 950–950.2.  Presentation of a written claim, and action on or rejection of the claim

12   are conditions precedent to suit.  State v. Superior Ct. of Kings County (Bodde), 32 Cal. 4th 1234,

13   1239 (Cal. 2004).  The "failure to timely present a claim for money or damages to a public entity

14   bars a plaintiff from filing a lawsuit against that entity."  Id. at 1239; Karim-Panahi v. L.A. Police

15   Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

16          Further, to state a tort claim against a public employee, a plaintiff must also *allege*

17   compliance with the California Tort Claims Act.  Cal. Gov't Code § 950.6; Bodde, 32 Cal. 4th at

18   1244.  "[F]ailure to allege facts demonstrating or excusing compliance with the requirement

19   subjects a complaint to [dismissal] for failure to state a cause of action."  Bodde, 32 Cal. 4th at

20   1239; see also Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441,

21   446–47 (2004) (state claims may also be dismissed if the allegations in the complaint are not

22   fairly reflected in the state tort claim).  The requirement that a plaintiff must affirmatively allege

23   compliance with the Government Claims Act applies to state law claims brought in federal court.

24   Karim-Panahi, 839 F.2d at 627.

25          Here, Plaintiff purports to raise state law claims against the City of Modesto, the Modesto

26   Police Department, and Modesto police officers — each of whom is covered by the Government

27   Claims Act.  The complaint, however, does not allege facts demonstrating Plaintiff complied with

28   the tort claims act prior to asserting his state law claims against Defendants.  Therefore, Plaintiff

17

1    fails to state any state law claim against any of the Defendants named in this action.

2          3.      Recommendation

3          For the foregoing reasons, the Court finds Plaintiff fails to state a claim for any of the

4    aforementioned asserted causes of action.  In its February 11, 2022 screening order, the Court

5    provided Plaintiff the applicable legal standards and gave Plaintiff an opportunity to amend his

6    complaint to cure the identified pleading deficiencies.  (See ECF No. 10 at 5–30.)  Plaintiff's

7    failure to file an amended complaint, despite being given the opportunity to do so, demonstrates

8    an inability or unwillingness to cure the identified pleading defects.  Accordingly, the Court

9    recommends that the complaint be dismissed, without prejudice.

10         **B.     Failure to Prosecute/Obey a Court Order**

11         Additionally, the Court should dismiss the action due to Plaintiff's failure to comply with

12   a Court order and failure to prosecute.  Local Rule 110 provides that "[f]ailure of counsel or of a

13   party to comply with these Rules or with any order of the Court may be grounds for imposition by

14   the Court of any and all sanctions . . . within the inherent power of the Court."  E.D. Cal. L.R.

15   110.  The Court has the inherent power to control its docket and may, in the exercise of that

16   power, impose sanctions where appropriate, including dismissal of the action.  Bautista v. L.A.

17   Cnty., 216 F.3d 837, 841 (9th Cir. 2000); Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402,

18   404 (9th Cir. 2010).

19         A court may dismiss an action based on a party's failure to prosecute an action, failure to

20   obey a court order, or failure to comply with local rules.  See, e.g., Ghazali v. Moran, 46 F.3d 52,

21   53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d

22   1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended

23   complaint); Carey v. King, 856 F.2d 1439, 1440–41 (9th Cir. 1988) (dismissal for failure to

24   comply with local rule requiring pro se plaintiffs to keep court apprised of address); Malone v.

25   U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court

26   order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of

27   prosecution and failure to comply with local rules).  Where a plaintiff fails to file an amended

28   complaint after being provided with leave to amend to cure the failure to state a claim, a district

1    court may dismiss the entire action.  Lira v. Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005).

2         In determining whether to dismiss an action for failure to comply with a pretrial order, the

3    Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's

4    need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy

5    favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  In

6    re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1226 (9th Cir. 2006);

7    Thompson v. Hous. Auth. of City of Los Angeles, 782 F.2d 829, 831 (9th Cir. 1986).  These

8    factors guide a court in deciding what to do; they are not conditions that must be met in order for

9    a court to take action.  In re Phenylpropanolamine, 460 F.3d at 1226.

10        In this instance, the public's interest in expeditious resolution of the litigation and the

11   Court's need to manage its docket weigh in favor of dismissal.  Id.  Plaintiff was ordered to file an

12   amended complaint to cure the deficiencies that were identified in his complaint within thirty

13   days of November 19, 2021.  Plaintiff has been provided with the legal standards that would

14   apply to his claims and the opportunity to file an amended complaint.  Plaintiff has neither filed

15   an amended complaint nor otherwise responded to the Court's order.  Plaintiff's failure to comply

16   with the orders of the Court hinders the Court's ability to move this action towards disposition

17   and indicates that Plaintiff does not intend to diligently litigate this action.

18        Since it appears that Plaintiff does not intend to litigate this action diligently there arises a

19   rebuttable presumption of prejudice to the defendants in this action.  In re Eisen, 31 F.3d 1447,

20   1452–53 (9th Cir. 1994).  The risk of prejudice to the defendants also weighs in favor of

21   dismissal.

22        The public policy in favor of deciding cases on their merits is greatly outweighed by the

23   factors in favor of dismissal.  It is Plaintiff's responsibility to move this action forward.  This

24   action can proceed no further without Plaintiff's cooperation and compliance with the order at

25   issue, and the action cannot simply remain idle on the Court's docket, unprosecuted.  In this

26   instance, the fourth factor does not outweigh Plaintiff's failure to comply with the Court's orders.

27        Finally, a court's warning to a party that their failure to obey the court's order will result

28   in dismissal satisfies the "consideration of alternatives" requirement.  Ferdik, 963 F.2d at 1262;

1  Malone, 833 at 132–33; Henderson, 779 F.2d at 1424.  The Court's February 11, 2022 order

2  requiring Plaintiff to file an amended complaint expressly stated: "If Plaintiff fails to file a first

3  amended complaint in compliance with this order, the Court will recommend to a District Judge

4  that this action be dismissed consistent with the reasons stated in this order."  (ECF No. 10 at 31.)

5  Thus, Plaintiff had adequate warning that dismissal of this action would result from his

6  noncompliance with the Court's order and his failure to state a claim.  His noncompliance

7  warrants dismissal.

8  <center>**III.**</center>

9  <center>**CONCLUSION AND RECOMMENDATIONS**</center>

10  Accordingly, it is HEREBY RECOMMENDED that this action be DISMISSED, without

11  prejudice, for Plaintiff's failure to state a claim and failure to prosecute/comply with a court

12  order.

13  These findings and recommendations are submitted to the district judge assigned to this

14  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  **Within twenty-**

15  **one (21) days** of service of this recommendation, Plaintiff may file written objections to these

16  findings and recommendations with the Court.  Such a document should be captioned "Objections

17  to Magistrate Judge's Findings and Recommendations."  The district judge will review the

18  magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff

19  is advised that failure to file objections within the specified time may result in the waiver of rights

20  on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan,

21  923 F.2d 1391, 1394 (9th Cir. 1991)).

22

23  IT IS SO ORDERED.

24  Dated:   **March 22, 2022**

UNITED STATES MAGISTRATE JUDGE

25

26

27

28

<center>20</center>